laCANNELLA, Judge.
Plaintiff, Renee Warren (Warren), appeals from a judgment in favor of her employer, Progressive Healthcare Providers (Progressive), which dismissed her claim for workers compensation disability and/or supplemental earnings benefits (SEB). We affirm the dismissal of her claim for compensation benefits. We reverse the judgment for non-payment of the correct amount of benefits and assess penalties of $500 and attorney fees of $500. Aso, we reverse the judgment and order payment of physical therapy treatments in the amount of $6259, and do not find that penalties and attorney fees are warranted.
Warren was employed by Progressive as a direct care staff aide working with mentally retarded adults at their group residence. In June 1993, she worked the 11:00 p.m. to 9:00 a.m. shift. Her job required her to assist the residents in their daily grooming and chores in the residence, to drive them to their jobs, to assist them in getting into the van and to do other housekeeping and cooking Rduties. On June 3,1993, Warren slipped and fell on a wet floor that a resident had just mopped and suffered injuries to her back and ankle. Progressive paid workers compensation payments to Warren from that date until March *464 16, 1994. In July 1994, the amount paid to the Warren was discovered to be incorrect. In November 1994, Progressive paid Warren the difference in a lump sum.
Following the discontinuance of her benefits, Warren filed a disputed claim for compensation in July 1994. On January 1, 1995, the case was heard. The hearing officer took the matter under advisement and rendered a judgment on February 15, 1995. It is from this judgment that Warren now appeals.
Warren contends that the hearing officer erred by only ruling that she was not entitled to temporary and total disability, when the claim was also for SEB. Second, she argues that the hearing officer erred in failing to award SEB because she proved a prima facie case that Progressive did not rebut. She next asserts that the hearing officer erred in finding that Progressive was justified in refusing to pay the bulk of physical therapy bills ordered by Dr. Zeringue because they were not pre-authorized, when Dr. Zeringue had received a general approval to treat her. Next, Warren asserts that the hearing officer erred in failing to award her penalties and attorney fees against Progressive for failure to timely pay her the correct amount of benefits.
In her first specification of error, Warren contends that she is entitled to SEB under La.R.S. 23:1221(3)(c)(i). She contends that her evidence at trial proved that she is unable to return to her previous employment because of substantial pain. Further, she asserts that Progressive failed to prove any earning capacity on her part. She contends that the trial judge only ruled on whether or not she was entitled to temporary and total disability, without considering whether she was entitled to SEB. Warren claims that she is requesting SEB and not only temporary or permanent total disability. She asserts |4that the evidence shows that she continue to suffer pain and that the only position that Progressive offered her was her old position, which does not meet her physical limitations.
Progressive responds that Warren failed to prove any disability that prevented her from returning to work. It asserts that the medical evidence shows that Warren consistently exaggerated her symptoms and exhibited inappropriate illness behavior when evaluated for her functional capacity evaluation. Alternatively, Progressive contends that the evidence shows that Warren is obese and that her obesity is the cause of any lingering pain, if any, that she may be experiencing.
In Peveto v. WHC Contractors, 93-1402 (La. 1/14/94), 630 So.2d 689, 692, the Louisiana Supreme court stated:
In addition to compensation benefits for the disability itself, the Louisiana Worker’s Compensation law also provides for the recovery of supplemental earnings benefits to compensate the employee for loss of earning capacity. In order to recover, the employee must first prove by a preponderance of the evidence that he is unable to earn wages equal to ninety percent or more of the wages he earned before the accident. La.R.S. 23:1221(3)(a); Daigle v. Sherwin-Williams Co., 545 So.2d 1005, 1007 (La.1989). Once the employee has satisfied this burden, the employer must establish that the employee is earning less than he is “able to earn” by showing that the “employee is physically able to perform a certain [higher paying] job and that the job was offered to him or was available to him in a reasonable geographic location.” Allen v. City of Shreveport, 618 So.2d 386, 389 (La.1993); La.R.S. 23:1221(3)(c)(i).
After the employer meets his burden of proving the injured employee is capable of earning at least ninety percent of her wages at the time she was injured, under La.R.S. 23:1221(3)(c)(ii), the employee has an additional opportunity to demonstrate that she is incapable of performing the employment available to her. In this regard, she must show by clear and convincing evidence, unaided by any presumption of disability, that solely as a consequence | 5of substantial pain, she cannot perform the employment available to her. Putman v. Commercial Union Ins. Co., 93,2263 (La.App. 1 Cir. 11/10/94); 645 So.2d 1250,1252; Tate v. L & A Contracting, 26, 110 (La.App. 2 Cir. 9/21/94), 643 So.2d 263, 269; Thomas v. Sears, Roebuck and Co., 94—2003 (La.App. 4 Cir. 3/29/95); 653 So.2d 102, 105.
*465 At trial, Warren testified that she was 29 years old, had a ninth grade education and had three children, ages 13, 9 and 7. She received on-the-job training for her employment with Progressive in a residence for elderly, mentally retarded clients. She stated that her job, for four days per week, consisted of dispensing medications, performing household chores, breaking up physical quarrels, driving the residents to workshops and helping residents into the van. Warren noted that one client suffered from seizures and bodily dysfunctions. Warren described the accident when she slipped and fell on the newly mopped floor (mopped by a client), hurting her back and ankle. She acknowledged that she had a previous back and neck injury in 1991, but went back to work with no residual problems. She described her medical treatment history and claimed that she continues to suffer pain. Warren stated that Progressive told her that she could return to her job, but that it could not provide the light duty required of her condition. At home, Warren stated that she cannot perform many of her household chores, such as vacuuming or cleaning the tub. She said that she wants to work, but cannot sit for long periods of time.
Following the injury on June 4,1993, Warren was seen by Dr. R. Joseph Tamimie, an orthopedist, at the Occupational Health Center, complaining of back, hip and ankle pain. He ordered x-rays of those areas and she was treated with medication and physical therapy. After three weeks, she was referred to Dr. Robert Mímeles, another orthopedic specialist, with continuing complaints of pain. He saw Warren on June 14, 1993 and July 1, 1993. Dr. Mímeles ordered a CT 16scan, which was negative. On the second visit, he found that her ankle pain was resolved. After his physical examination, he determined that she had no disc pathology or nerve root compression. He declared that she could return to work as of July 5, 1993 and that she did not need further care.
Warren continued to complain of back pain and pain radiating into her right leg. She sought further treatment from Dr. V.J. Ze-ringue on July 24, 1993. He noted that Warren weighed 187 pounds and was five feet tall. Dr. Zeringue treated her with various medications and physical therapy until June 14, 1994. During his treatment, he ordered a Magnetic Resonance Imaging (MRI) test and an electromyography. The MRI showed minimal bulging at two disc levels. In November, 1993, Dr. Zeringue believed that Warren was capable of working, however, he did not specifically tell her to return to work, apparently because she was still complaining of severe pain. She was provided with a cane to assist her in walking. Dr. Zeringue felt that her complaints were credible based on the clinical findings. He stated that he initially thought Warren suffered a soft tissue injury, but that she actually had some nerve root irritation from one or more of the bulging discs, which would explain her consistent back pain.
In April 1994, Dr. Zeringue believed that Warren could return to light duty work. He stated that she could perform the duties of her job, (cooking, cleaning, paperwork and some driving), as long as she did not lift more than 20 pounds, did not sit for long periods of time, did not lift the residents or help lift residents into the van. On cross-examination, Dr. Zeringue testified that bulging discs are not always indicative of trauma and that people with bulging discs can continue their normal activities. He stated that he encouraged Warren to lose weight because it would help alleviate the pain.
During his treatment of Warren, Dr. Ze-ringue referred her for evaluation to MedRe-hab, Inc. at the River Parishes Rehabilitation Clinic. On December 6, 1993 |7she was examined and evaluated by Woody Norswor-thy, physical therapist. In his report he concluded that she had lumbral sacral dysfunction syndrome, but also exhibited symptom magnification and non-organic signs of pain. He stated that Warren failed to perform the recommended exercises, complaining that they caused pain, although he explained the importance of increasing her range of motion and strength to help stop the pain. In January 1994, Dr. Zeringue referred Warren to MedRehab, Inc. again for a functional capacity evaluation.
Henry Nuss, Jr., the MedRehab, Inc. physical therapist, performed the functional *466 capacity evaluation, which lasted two and one-half hours. This evaluation is systematic and involves the patient’s history, visual observation of the patient’s movements and manual manipulation to measure the individual’s physical capabilities. Using well-documented methods, parts of the test are designed to discover exaggeration of symptoms or inappropriate illness behavior. Nuss noted that Warren carried the cane, but used it minimally. Nuss stated that, during the test, Warren showed submaximal effort, complaining of pain even in tests that should not have produced any pain symptoms in her low back, ankle and skin. He concluded that the test should be repeated and that Dr. Ze-ringue should emphasize the importance of full effort in completing the various portions of the evaluation. He believed that Warren was giving a poor effort and showed some exaggeration of symptoms and inappropriate illness behavior. On February 4, 1994, the evaluation was repeated using two different types of stabilizing apparatus to test the range of motion. At the conclusion, Nuss felt that Warren was still showing inappropriate illness behavior, symptom magnification and poor effort. However, Nuss recommended that she return to sedentary work with restrictions of light weight lifting and freedom of mobility. On cross-examination, Nuss noted that, while the determination of symptom exaggeration is subjective, the inappropriate illness behavior conclusion is based on medically documented |8objective criteria. He testified that he was not saying that Warren is not in pain, only that the evaluation criteria showed symptom exaggeration and inappropriate illness behavior.
In November 1993, Warren was examined by Dr. Gordon Nutik, an orthopedic specialist, at the request of Progressive. In February 1994, the doctor prepared a second report based on his review of her functional capability evaluation and her medical records. Dr. Nutik concluded that Warren suffered a soft tissue injury that should have resolved by February 1994. He believed that, although she walked bent-over with a cane, when he saw her in November she was capable of better effort in his examination tests than she gave. He suggested that a work hardening program would not be successful because she was not willing to give her full effort to getting back into shape. He said that the MRI showed only minimal bulge. Dr. Nutik reviewed Warren’s job description and believed it represented sedentary work. In his February report, the doctor stated that she was able to return to work.
In May 1994, Warren went to Osehner Medical Clinic with the same complaints. She received physical therapy treatments in July, August and September. At Osehner, she was seen by Dr. Nedda Hendler, a general internal medicine specialist. Dr. Hen-dler examined Warren and believed that she suffered inflammation of the nerve root. Dr. Hendler referred plaintiff to Dr. Paul Parks, an orthopedist, because Warren was unhappy with her previous orthopedic doctors. Warren’s weight at the time was 196 pounds. Dr. Hendler treated her with medications until December 7, 1994. Dr. Hendler believed that she was telling the truth about her pain, although she was uncooperative during a physical therapy visit and on one occasion while being examined by another doctor at Osehner. At one point, Dr. Hendler prescribed a temporary handicap license for Warren because she was limping, in severe pain and could not walk |9two hundred feet without stopping, as required for the license. Dr. Hendler noted that she usually came to the examining room alone, but on the last visit, her husband attended her because of their concern that she was not getting better. Dr. Hendler explained that there were no objective reasons for the pain, but that Warren’s obesity, failure to attend physical therapy or follow her exercise program, could be aggravating her condition. However, Dr. Hendler stated that the weight problem was not necessarily causing the pain. She noted that many overweight patients recover easily. Dr. Hendler considered Warren to be disabled and had not released her to return to work at the last visit in December 1994.
Dr. Hendler referred Warren to the neurology department, as well as to Dr. Parks. However, neither the neurologist or the orthopedist found any objective reasons for Warren’s pain. Dr. Parks examined her on *467 June 22, 1994. He testified that he found inconsistencies, which might indicate symptom magnification, but also recommended other tests, such as blood work, to screen for other reasons for the pain such as tumor, fracture, infection or something inflammatory. He concluded that Warren did not require further orthopedic care.
Rachelle Groaning was employed by Progressive until April 1994 as the Human Resources and Staff Development Director. She stated that before her injury, Warren worked from 11:00 p.m. to 9:00 a.m. She testified that although she never spoke to Dr. Zeringue, she was told by the workers compensation insurer that Warren was able to return to work. At that time, she contacted Warren and offered her the 3:00 p.m. to 11:00 p.m. shift. Groaning stated that she told Warren that they would modify the position to conform with her restrictions in any way that she needed and that if a problem arose, she could telephone Groaning to resolve it. According to Groaning, plaintiff declined because she wanted to be home with her children during the day. However, the lio3:00 p.m. to 11:00 p.m. shift was offered because Warren would not be working alone and other employees could handle any physical jobs that would crop up. Groaning stated that they were willing to work with Warren. Groaning admitted that she did not submit a modified work duty plan to any of Warren’s doctors.
Groaning’s replacement, Allen Anderson, agreed that they believed that Warren could return to work and that they would be willing to accommodate Warren’s needs. Anderson testified that Warren never attempted to return to work. He also stated that he neither offered Warren her job back, nor submitted any modified work plan to any doctor.
The standard of the appellate court’s review of the factual findings of the trial court in a worker’s compensation case is governed by the manifest error or clearly wrong standard, as in other eases. Smith v. Louisiana Dept. of Corrections, 93—1305 (La. 2/28/94); 633 So.2d 129, 132. Reasonable evaluations of credibility and inferences of fact should not be disturbed upon review where conflict exists in the testimony, even though an appellate court may feel its own evaluations and inferences are more reasonable than the factfinder’s. Smith v. Louisiana Dept, of Corrections, 633 So.2d at 132.
In order to recover SEB, the employee must first prove by a preponderance of the evidence that she is unable to earn wages equal to ninety percent or more of the wages that she earned before the accident. LAR.S. 23:1221(3)(a). This is a facts and circumstances analysis, in which the court is mindful of the jurisprudential tenet that worker’s compensation law is to be liberally construed in favor of coverage. Smith v. Louisiana Dept, of Corrections, 633 So.2d at 132. “In determining if an injured employee has made out a prima facie case of entitlement to supplemental earnings benefits, the trial court may and should take into account all those factors which might bear on an employee’s ability to earn a wage.” Daigle v. Sherwin-Williams Co., 545 So.2d 1005, 1007 |n(La,1989), quoting Gaspard v. St. Paul Fire & Marine Insurance Co., 483 So.2d 1037,1039 (La.App. 3rd Cir.1985). See, Pinkins v. Cardinal Wholesale Supply, 619 So.2d 52 (La.1993).
The hearing officer concluded that Warren was not entitled to further compensation benefits. After our review of the testimony, we find no manifest error in that determination. Although Warren claimed to be in substantial pain, the medical evidence does not support her allegations. While it may be that Warren is suffering some discomfort, there was a great deal of evidence that she magnified her symptoms and that her uncooperative attitude and obesity impeded the process of pain resolution. Even so, Progressive offered her a position that would be modified according to her physical needs at the same salary as she was making when she was injured. Thus, Warren failed to bear her burden of proving by a preponderance of the evidence that she was unable to earn 90% or more of her previous salary. Although, by failing the first hurdle, we need not proceed further, we also note that plaintiff failed to show by clear and convincing evidence that, solely as a consequence of *468 substantial pain, she cannot perform the employment available to her. Thus, we affirm the judgment dismissing Warren’s claim for further disability and SEB.
Warren also argues that the hearing officer erred in failing to order the payment of Dr. Zeringue’s bills for physical therapy treatments from July 6, 1993 through December 1,1993, totalling $6,259. The company did pay for six visits in the amount of $750. Progressive contends that the physical therapy was not authorized by the workers compensation insurer’s pre-certification company.
Roosevelt Smith, the claims adjuster for Louisiana Workers Compensation Corporation (LWCC), testified that he took over the file in August 1994. He stated that the doctor’s physical therapy bills were not paid because Dr. Zeringue failed to provide the necessary documentation for approval of the treatment to the prejcertification12 company for the insurer, Corvel Corporation (Corvel). He asserted that the doctor was notified on several occasions that the company required substantiation for the treatment, but he did not provide the information until shortly before trial. Smith testified that Corvel sent a closure letter to Dr. Zeringue in August 1993, informing him that the physical therapy bills were denied because the clinical information was not made available to it for review. In that letter, the company stated that the doctor was entitled to appeal its decision. Similar letters were sent to the doctor in January 1994 and in April 1994. After Smith came into the case, he stated that he telephoned the doctor’s office with the same request. However, in going through the notes of the previous adjuster, Smith noted that there is nothing to indicate that the adjuster directly contacted Dr. Ze-ringue’s office and told him that the physical therapy was limited to six visits.
Dr. Zeringue testified that Warren received the physical therapy treatments in his office almost every weekday from June to the beginning of December. He stated that he prefers to give the treatments in his office because he can monitor the patient’s progress better and it is less expensive for the patient. Dr. Zeringue stated that he discontinued the treatments in December so that Warren could stabilize before having the functional capacity evaluation. Dr. Zeringue believed that Warren needed the treatments, which consisted of heat and electrical stimulation. He testified that the claims adjuster preceding Smith gave approval for Dr. Ze-ringue to treat Warren and that no one informed him that the company limited the number of physical therapy treatments. The doctor testified that normally, when his office staff speaks to an adjuster, his office personnel tells the adjuster the treatment plan for the patient. He said that the adjusters ask a lot of questions and he believes that the adjuster for Progressive was told that Warren was going to require the physical therapy treatments. He further stated that he did not have the letter that Corvel was supposed to have sent in August 1993, but |i3he received the letter dated January, 1994. He stated that, in the January letter, Corvel informed him for the first time that it was the insurer’s policy to have electrical stimulation pre-eertified. At that point, he stopped treating his other patients covered by LWCC without written approval. The doctor said that based on the request by Corvel in April, 1994, he sent the information in June, 1994, but has not heard from either Corvel or LWCC since he sent the required documentation.
The trial judge determined that Progressive did not owe the payments to Dr. Zeringue because the doctor failed to get the required prior approval. However, we note that he factually erred in stating that the doctor stopped Warren’s treatment when he found out that he was not going to be paid. The testimony shows that Dr. Zeringue stopped treating other patients without written approval from LWCC after he was informed that the insurer was not going to pay his bills because he failed to get prior approval. He was not specifically informed that he was not going to be paid, absent the documentation, before the treatments began and only one letter was sent to him during the treatments. Notwithstanding this letter in August 1993 informing the doctor that Corvel needed more information, letters by Warren’s attorney and the new bills were *469 sent to LWCC asking for payment. Despite these actions, LWCC did not send any further notice that the claim would be denied, absent the information being provided, until January, 1994, after the treatments had been terminated. Furthermore, the adjuster involved during these events gave the doctor a general approval to treat Warren, which was not limited in any manner then or later. The doctor testified that his records indicate that his office provided the necessary information in June, 1994, although Smith claimed that they received the information in January, 1995. At any rate, Corvel has in fact received the required documentation. Considering the testimony of all the medical experts | i4that Warren suffered a soft tissue injury and Dr. Zeringue’s testimony that the physical therapy treatments were warranted, we find that plaintiff proved by a preponderance of the evidence that the treatments were medically necessary. We further find that the communications between the doctor and the insurer indicate a misunderstanding. Therefore, we find that Dr. Zeringue is entitled to be paid for the physical therapy bills and we reverse that portion of the judgment denying payment of those bills.
In the final issue presented by Warren, she contends that the hearing officer erred in failing to award penalties and attorney fees against Progressive in its handling of the payment of her benefits. Warren and Progressive agree that Warren was paid the incorrect amount of compensation. Warren was paid $95.84 weekly, when she should have received $131.47, based on her average weekly salary of $197.20. The payments were made from June 4, 1993 to March 16, 1994. The difference was adjusted and paid to Warren in a lump sum in November 1994.
Plaintiff argues that Smith admitted that the LWCC received a copy of the claimant’s 1008 form in July 1994, which states that there is an issue regarding whether the correct amount of compensation had been paid. Despite this, the LWCC did not investigate and correct the miscalculation for more than 60 days from the notice that the amount was disputed. No justification was offered for the delay.
Progressive contends that Warren, in her 1008 form, incorrectly calculated her salary at $169.75 and the compensation due at $113.16. Progressive also notes that, in her deposition, she gave the wrong hourly wage. It contends that when the actual amount was discovered, it took steps to pay Warren the difference.
The evidence shows that the deposition by Warren was taken in | ^November, 1995, and according to Smith, played no part in the recalculation of Warren’s benefits and thus, is irrelevant. Apparently the first notice that LWCC received that the benefits it had paid were incorrect was from the 1008 form supplied to it in July, 1994. There is no testimony by Progressive as to why it took from July to November to pay Warren the correct difference. However, Progressive owes the worker an obligation to pay compensation timely. Without an explanation, Progressive has not shown that its delay was not arbitrary and capricious. Therefore, we find that Progressive was arbitrary and capricious and that Warren is entitled to penalties in the amount of $500 and attorney fees in the amount of $500.
Accordingly, we hereby affirm the judgment denying further compensation benefits to Warren. We reverse the judgment in regard to payment of Dr. Zeringue’s unpaid bills for physical therapy, finding in favor of Warren and against Progressive in the amount of $6259. We also reverse the judgment in regard to penalties and attorney fees for failure to pay compensation benefits timely and award Warren penalties against Progressive in the amount of $500 and attorney fees in the amount of $500. The judgment is affirmed in all other respects.
AFFIRMED IN PART,- REVERSED IN PART; AMENDED IN PART AND RENDERED AS AMENDED.
|,REHEARING GRANTED:
We have granted a rehearing in this ease solely to correct the award of penalties to conform with La.R.S. 23:1201(E), which states:
E. If, pursuant to this Chapter, any compensation or medical benefits payable without an order is not paid within the time *470 period provided in Subsection B, C, or D of this Section, there shall be added to such unpaid compensation a penalty of an amount equal to twelve percent thereof or a total penalty of not more than fifty dollars per calendar day for each day in which any and all compensation or medical benefits remain unpaid, whichever is greater, which shall be paid at the same time as, and in addition to, such compensation, unless such nonpayment results from conditions over which the employer or insurer had no control.
The twelve percent or fifty dollars per calendar day, whichever is greater, additional payment shall be assessed against either the employer or the insurer, depending upon who was at fault in causing the delay.
Any additional compensation paid by the employer or insurer pursuant to this Section shall be paid directly to the employee. The total fifty dollar per calendar day penalty provided for in this Subsection shall not exceed two thousand dollars in the aggregate.
Based on the above provisions, we modify our decree as follows:
Accordingly, we hereby affirm the trial court judgment denying further compensation benefits to Warren. We reverse the judgment in regard to payment |aof Dr. Ze-ringue’s unpaid bills for physical therapy, finding in favor of Warren and against Progressive in the amount of $6259. We also reverse the judgment in regard to penalties an attorney fees for failure to pay compensation benefits timely and award Warren penalties against Progressive according to the provisions of La.R.S. 23:1201 E. and attorney fees in the amount of $500. The judgment is affirmed in all other respects.
AFFIRMED IN PART; REVERSED IN PART; AMENDED IN PART AND RENDERED AS AMENDED.