698 So.2d 460 (1997)
Thomas F. KORTZ
v.
COLT ENERGY SERVICES, INC.
No. 97-CA-159.
Court of Appeal of Louisiana, Fifth Circuit.
July 29, 1997.
*462 Hortence M. Patterson, Metairie, for Defendant/Appellant, Colt Energy Services, Inc.
Joel Levy, Marrero, for Plaintiff/Appellee, Thomas F. Kortz.
Before BOWES, DUFRESNE and GOTHARD, JJ.
BOWES, Judge.
Appellant, Colt Energy Services Inc. ("Colt"), appeals a judgment of the worker's compensation court awarding benefits, penalties and attorney fees to appellee Thomas Kortz. We amend, and then affirm, as follows.
Appellee filed a claim for compensation on March 27, 1995 for injuries to his foot which he alleged to have suffered on October 10, 1994. In the petition, Kortz stated that he stepped into a pothole or uneven surface on grounds owned by Murphy Oil, and that he reported that injury to his supervisor, Anthony Blanchard, on that same date. At the time of the accident, plaintiff was an employee of Colt, which denied that plaintiff had sustained a compensable accident.
At trial, the parties stipulated that the average weekly wage was $549.44; that the compensation rate to which plaintiff would be entitled was $323.00 per week; and that Kortz was an employee of Colt at the time he was injured. Various medical reports and wage records were also stipulated to at trial.
Mary Kortz, former wife of the plaintiff, testified that she usually dropped her husband off on Engineers Road where he would catch a ride on the ferry with other employees. When she picked him up on the day of the accident, Kortz was limping. He told her that on his way to "punch out" after work the truck (with which he customarily left the *463 grounds) was pulling out and running to catch the truck he stepped in a hole, hurting his foot. The next day he called his employer, and they told him to go to a doctor at Primary Care. The doctor there told him he could go back to light work, and he worked thereafter for 15-20 hours per week. She said that her husband called for this light work every day, and that sometimes he was called, and sometimes he was told he was not needed.
Plaintiff testified he was a mechanic who worked offshore, or sometimes in the shop. On the day of the accident, after work, he stopped to make a telephone call; he noticed that the company truck on which he usually rode to the ferry was pulling away from the building and he started trotting after it. He had to check out from two doors and had not at that time clocked out; as he ran for the truck, he stepped into a hole and "came out limping."
His ankle began to swell, but because he had sprained his ankle in the past, he did not worry about it. He told the driver, his supervisor, Anthony Blanchard, that he had twisted his ankle, and needed to "walk it off"; however, he was driven to the second door to clock out. He was limping at this point. He also told several people that he "twisted his ankle," including co-workers Joie Alexie and David Braud.
The next morning he could not put any weight on the foot. He wrapped it tightly and drove to the ferry to tell his supervisor of the problem. Then he went to the office, and was subsequently sent to Dr. Richard at Primary Care. Dr. Richard diagnosed a broken (bone in the) foot and he was referred to an orthopedist. His foot was put in a cast and he was told he could walk, but could not go offshore because he could not get a safety boot on his foot. He made himself available to work at the company, but was often told there was nothing for him to do.
To make ends meet, he cleaned shops for people he knew. He also worked building up electrical systems for engines at the electrical division of Colt. He did some maintenance on a forklift for a total of two days and for which he got paid.
In early December 1994, the doctor took the cast off and told him to take it easy for another week. Then plaintiff was released to go back to work.
On cross-examination, he stated that during the period of his disability, he worked the odd jobs mostly for food.
Anthony Blanchard testified that he was plaintiff's supervisor at Colt. At the end of the day in question, he drove the truck out of the vehicle gate at the work site and picked up the men whom he usually drove to the ferry. The others had to exit through a personnel gate, and Blanchard did not see plaintiff chase after his truck, nor did he see plaintiff limping. Kortz did not tell him that he had twisted his ankle. Plaintiff got out of the truck and walked across the street to get a beverage; he stopped and stood visiting with a friend, and then stood outside the truck for several minutes until the ferry arrived. The next morning plaintiff indicated that his foot was hurting, but Blanchard did not recall that plaintiff told him any details. Blanchard knew that the company authorized plaintiff to see Dr. Richard on the day after the accident.
The witness further testified that plaintiff had been offered full time employment in the shop until he was able to return to the field doing painting, cleaning, and other light tasks. Blanchard stated that plaintiff came in sometimes, and sometimes did not, and such was a voluntary choice on plaintiff's part. Kortz was never told that there was not enough work for him to do. Eventually, plaintiff just stopped coming to work. However, Blanchard admitted that he was not involved in the worker's compensation management of the company.
Martha Ronsonet, of the Louisiana Worker's Compensation Corporation, investigated the accident. Two statements were taken from two employees, Joie Alexie and Louis Braud, and the company determined from these that the accident did not take place at work. A recorded statement was also taken from Alexie one year after the accident which indicated that nothing unusual happened to plaintiff until the next morning (after the alleged accident), and that there was no indication that plaintiff had complained of an *464 accident the night before. Dr. Richard's bill had been paid, but the other medicals were outstanding.
A number of exhibits were stipulated to at trial. The recorded statement by Alexie, referred to hereinabove, evidenced that he did not see the incident involving Mr. Kortz. He did not think that plaintiff had told him about the ankle the same day it happened, but did remember Kortz complaining "in the evening, when he got off, that his leg, he said his ankle hurt, you know, the day he got off, uh that was it, you know, late evening....we was knocking off of work and he said he twist his ankle, you know." Copies of other written statements from Mr. Alexie and from Lewis Braud indicated that they worked with plaintiff, but did not see him get injured on the day in question.
The initial employer's report, which was not taken until April 4, 1995, indicated that the details of the injury were unknown. The doctors' reports (both from Primary Care and from the consulting orthopedist, Dr. Mark Juneau), taken the on the day following the accident shows that on both occasions the plaintiff reported the accident as having occurred when he was running after a truck and stepped into a hole.

JUDGMENT
The court found that Kortz was injured in the course and scope of his employment, and awarded SEB benefits from October 11, 1994 through November 22, 1994. The court further ordered payment of all medical bills and expenses from October 10 through July 19, 1995, with credit for all expenses and benefits previously paid. The court additionally found the employer to be arbitrary and capricious in failing to pay the medical bills and assessed a penalty of $2,000.00 or 12% of unpaid benefits, whichever is greater, and attorney fees of $1,500.00.
The trial court found it a "difficult task" to evaluate credibility in this case "in view of the inconsistencies." Although no one witnessed the accident, the court found that plaintiff "recited the facts as to how the accident occurred with a fair degree of consistency to various parties and physicians" and that the statement taken of Joie Alexie corroborated the claimant's testimony as to his complaints of pain on the evening of the accident. The court further found that although Kortz reported the accident to his employer, the employer failed to file a claim form, refused to pay for medical treatment, and did not refer the claim to their insurer until six months later. The judge said, "They did not reasonably controvert the claimant's entitlement to benefits. They ignored their doctors' advice ... It is clear that the defendants were arbitrary and capricious herein."
On appeal, Colt urges that it was error to find that plaintiff had suffered a work-related accident; that plaintiff did not prove entitlement to supplemental earnings benefits; and that the court applied the wrong standard in finding that Colt was arbitrary and capricious in failing to pay benefits when it had a reasonable basis for its denial.

ANALYSIS
We stated the now well known applicable standard of review in Warren v. Progressive Healthcare Providers, 95-312 (La.App. 5 Cir. 1995), 664 So.2d 462, as follows:
The standard of the appellate court's review of the factual findings of the trial court in a worker's compensation case is governed by the manifest error or clearly wrong standard, as in other cases. Reasonable evaluations of credibility and inferences of fact should not be disturbed upon review where conflict exists in the testimony, even though an appellate court may feel its own evaluations and inferences are more reasonable than the factfinder's.
In order to recover SEB, the employee must first prove by a preponderance of the evidence that [she] is unable to earn wages equal to ninety percent or more of the wages that [she] earned before the accident. LAR.S. 23:1221(3)(a). This is a facts and circumstances analysis, in which the court is mindful of the jurisprudential tenet that worker's compensation law is to be liberally construed in favor of coverage. "In determining if an injured employee has made out a prima facie case of entitlement to supplemental earnings benefits, *465 the trial court may and should take into account all those factors which might bear on an employee's ability to earn a wage." [Citations omitted].
As a threshold requirement, a worker in a compensation action must establish "personal injury by accident arising out of and in the course of his employment." La. R.S. 23:1031; Bruno v. Harbert International Inc., 593 So.2d 357 (La.1992). Despite the liberal construction of the statute afforded the worker in a compensation action, the worker's burden of proof is not relaxed. Rather, as in other civil actions, the plaintiff-worker in a compensation action has the burden of establishing a work-related accident by a preponderance of the evidence. Prim v. City of Shreveport, 297 So.2d 421 (La.1974); Bruno, supra.
A worker's testimony alone may be sufficient to discharge this burden of proof, provided two elements are satisfied: (1) no other evidence discredits or casts serious doubt upon the worker's version of the incident; and (2) the worker's testimony is corroborated by the circumstances following the alleged accident. Bruno, supra.
Corroboration of the worker's testimony may be provided by the testimony of fellow workers, spouses or friends. Corroboration may also be provided by medical evidence. West v. Bayou Vista Manor, Inc., 371 So.2d 1146 (La.1979); Bruno, supra.
In determining whether the worker has discharged his or her burden of proof, the trial court should accept as true a witness's uncontradicted testimony, although the witness is a party, absent "circumstances casting suspicion on the reliability of this testimony." Bruno, supra; Holiday v. Borden Chemical, 508 So.2d 1381, 1383 (La. 1987).

THE ACCIDENT
In the present case, it is uncontroverted that the accident was not witnessed by anyone save the plaintiff. While the testimony of Mr. Blanchard indicates that plaintiff did not tell him about the accident, and was not limping immediately afterward, we note that he was not with plaintiff at the time of the accident, nor was Mr. Alexie. Defendant urges that it is important to the resolution of credibility that plaintiff's story varied in certain particularswhether or not Kortz rode in the truck to punch out, or whether he walked to the clock to punch out, and whether he was facing the truck when he stepped in the pothole or was running behind the truck.
Importantly, we note however, that what has not varied in the evidence is the consistent statement of the plaintiff that he stepped in a pothole on the work premises as he was leaving work. The recorded statement of Mr. Alexie relative to the time plaintiff began to complain of pain, the testimony of plaintiff's wife, and the medical reports written on the day following the accident all corroborate plaintiff's version of the accident. We find the discrepancies referred to above to be insignificant and the resolution of the trial court on this credibility issue to be reasonable. Finding no manifest error therein, we decline to disturb such on review.[1]
Under the above cited jurisprudence, we affirm the finding of the trial court that plaintiff proved, by a preponderance of the evidence, that he suffered a work-related accident.

SEB BENEFITS
Under La.R.S. 23:1221,[2] the injured employee bears the burden of proving, by a *466 preponderance of the evidence, that the injury resulted in his or her inability to earn wages equal to 90% or more of wages at the time of injury; such is determined by the facts and circumstances of each individual case. Daigle v. Sherwin-Williams Co., 545 So.2d 1005, 1008 (La.1989); Freeman v. Poulan/Weed Eater, 630 So.2d 733, (La. 1994); Warren, supra.
Having resolved the credibility issue in favor of claimant, the trial court determined that Kortz was injured in a work-related accident, and did, in fact, attempt to work for the defendant within his physical limitations. Plaintiff had spent the majority of his adult life as a mechanic. The medical evidence indicates that while the cast was on, plaintiff could not wear a safety boot or get the cast wet, which prohibited him from going offshore and engaging in his usual employment as mechanic. He was limited to light work which did not require climbing. He attempted to work in the shop for Colt, which he did for some few hours. He was unable to obtain other employment other than to provide some food. Colt did not prove that it offered or provided employment within Kortz's limitations. In this regard, while we have considered on review the testimony of Blanchard, we also note that he was not involved in the management or worker's compensation aspects of Colt and did not have first person knowledge of that department. No other evidence or testimony was submitted by Colt tending to prove the availability of employment for Kortz.
The concept of supplemental earnings benefits is based on a scheme for replacing lost earning capacity by measuring an injured worker's ability to earn wages in the competitive marketplace of workers. A number of factors other than the worker's earning capacity might affect the matter, such as general economic conditions, assistance by employers or co-employees, geographical location and others. Allen v. City of Shreveport, 618 So.2d 386 (La.1993). Also Warren, supra. Considering the relevant facts and circumstances of this particular case delineated above, we affirm the findings of the trial court that claimant proved he was unable to earn 90% of his ages during the period of his disability.
Once plaintiff has proven his case, the burden shifts to the employer, who can defeat or reduce benefits only by showing that the employee was earning less than he was "able to earn." Freeman, supra; Daigle, supra. The employer must prove that the employee is physically able to perform a certain job and that the job was offered to him or was available to him in a reasonable geographic location. Allen, supra. In the present case Colt presented no evidence and made no such showing. The court, therefore, correctly determined that Kortz was entitled to supplemental earnings benefits, and we find no manifest error therein.

PENALTIES AND ATTORNEY FEES
Defendant contests the award of penalties and attorney fees under La. R.S. 23:1201. Whether an employer's refusal to pay workers' compensation benefits warrants the imposition of penalties and attorney's fees is a factual question which will not be disturbed on appeal in the absence of manifest error. Williams v. Hospital Service, Inc., 95-214, (La.App. 5 Cir. 9/20/95), 663 So.2d 749; Henderson v. New Medico Associates, Inc. 95-0488 (La.App. 1 Cir. 11/9/95), 667 So.2d 1094.
In part, defendant alleges that the trial court erroneously applied the incorrect standard of "arbitrary and capricious" rather than that of a claim "reasonably controverted."
The law in effect at the time of the injury controls in workers' compensation *467 cases. Mackie v. Coast Quality Construction, 95-668 (La.App. 5Cir. 12/13/95), 666 So.2d 1173, 1175; Manuel v. River Parish Disposal, Inc. 96-302 (La.App. 5 Cir. 10/1/96), 683 So.2d 791.
At the time of the accident, La. R.S. 23:1201(E)[3] provided for the imposition of a 12% penalty on compensation benefits which the employer or insurer fails to pay timely. Penalties are not to be assessed when the employee's right to such benefits has been reasonably controverted by the employer or insurer. Schmitt v. City of New Orleans, 632 So.2d 367, 374 (La.App. 4 Cir.1993); Starks v. Universal Life Ins. Co., 95 1003 (La.App. 1 Cir. 12/15/95), 666 So.2d 387.
Furthermore, La. R.S. 23:1201.2 read in relevant part as follows:
Any insurer liable for claims arising under this Chapter, and any employer whose liability for claims arising under this Chapter is not covered by insurance, shall pay the amount of any claim due under this Chapter within sixty days after receipt of written notice. Failure to make such payment within sixty days after receipt of notice, when such failure is found to be arbitrary, capricious, or without probable cause, shall subject employer or insurer, in addition to the amount of the claim due, to payment of all reasonable attorney's fees for the prosecution and collection of such claim, or in the event a partial payment or tender has been made, to payment of all reasonable attorney's fees for the prosecution and collection of the difference between the amount paid or tendered and the amount due.
This statute requires a finding that the defendant acted arbitrarily and capriciously and without probable cause before attorney's fees can be assessed. Hayes v. Louisiana Risk Management, 93-1144, (La.App. 3 Cir. 4/6/94); 635 So.2d 591, 593, writ denied, 94-1020 (La.6/17/94), 638 So.2d 1097. See Bailey v. Smelser Oil & Gas, Inc., 620 So.2d 277, 280 (La.1993); Starks, supra. In Starks, the court stated:
The statutes providing for penalties and attorney's fees, which are penal in nature, must be strictly construed. An assessment of penalties and attorney's fees is proper unless the employee's rights to benefits are reasonably controverted. The test to determine whether the employee's right to benefits was reasonably controverted is set forth in Watson v. Amite Milling Co., Inc., 560 So.2d 902, 906 (La. App. 1st Cir.), writ denied, 567 So.2d 614 (La.1990), citing Chelette v. American Guarantee and Liability Insurance, Inc., 480 So.2d 363, 367 (La.App. 3rd Cir.1985), as follows:
[G]iven the facts, medical and otherwise, known to the employer or his insurer, did the employer or insurer have a reasonable basis to believe that medical expenses and compensation benefits were not due the employee. Stated another way, did the employer or his insurer have sufficient factual and medical information to reasonably *468 counter the factual and medical information presented by the claimant.
In its reasons for judgment, the court found both that Colt did not reasonably controvert the claim and that it was arbitrary and capricious. However, the judgment itself only states the employer was arbitrary and capricious. We hold that the trial court did use the correct standard of "arbitrary and capricious" in assessing attorney fees under La. R.S. 23:1201.2 as it read at the time of the accident. Our review of the record also discloses under the above criteria that Colt did not reasonably controvert the claim. Therefore, the award of penalties was proper.
After the initial office visit, Colt paid no medical expenses or indemnity benefits. Kortz reported the accident on the day after it happened, as evidenced by the employer sending him to its physician; yet Colt failed to file a claim. Colt did not refer the claim to its insurer until six months later. "They did not reasonably controvert the claimant's entitlement to benefits" (Trial Court's Reasons for Judgment). The court also found that defendant was arbitrary and capricious in ignoring the law relative to a timely report.
An employer who fails to timely investigate an employee's compensation claim subjects itself to statutory penalties and attorney's fees. Nelson v. Roadway Exp., Inc., 588 So.2d 350 (La.1991); Cochennic v. Dillard's Dept. Store Warehouse, 95-705 (La. App. 5 Cir. 1/17/96), 668 So.2d 1161; Dowden v. Liberty Mut. Ins. Co., 346 So.2d 1311 (La.App. 3 Cir.1977), writ denied, 350 So.2d 674 (1977). An unjustified belief that an employee's injury did not result from an accident does not excuse failure to pay worker's compensation benefits. Cochennic, supra. There must be a real or substantial issue to deny benefits to a disabled employee. Nelson, supra; Barbre v. Stevens Collision Center, 95-1133, (La.App. 4 Cir. 1/19/96), 671 So.2d 521.
In the present case, the record is devoid of evidence of any substantial attempt by Colt to ascertain the actual facts of the accident prior to its refusal to pay compensation. As the trial court found, no report was made until six months after the accident; the only written "statement" that was dated near the time of the accident was a brief form from Alexie, and it, like the others, was unwitnessed and, at most, indicated that no one was with plaintiff at the time of the accident.
Colt avers that it denied benefits based in part on its insurer's investigation; however, the accident was not reported until six months later. We find this wholly insufficient to constitute a real and substantial issue so as to relieve defendant of its obligation under the compensation laws. The facts, medical and otherwise, which were known to Colt did not give the employer a reasonable basis to believe that medical expenses and compensation benefits were not due. There was no reasonable controversy of the claim and therefore, we hold that the trial court correctly found defendant to be arbitrary and capricious.

ANSWER
Kortz answered the appeal, requesting additional attorney fees and interest on benefits from the date due under La. R.S. 23:1201. The applicable statute is La. R.S. 23:1201.3, which provides that any compensation awarded shall bear judicial interest from the "date ordered paid by the hearing officer until the date of satisfaction." See Brazley v. Burger King/CIGNA 613 So.2d 739 (La. App. 4 Cir.1993). Because the language of this statute is mandatory, an award of legal interest in workers' compensation cases is not discretionary with the court, as the interest attaches automatically until the judgment is satisfied, whether prayed for in the petition or mentioned in the judgment. Crooks v. Town of Ball, 94-466 (La.App. 3 Cir. 11/2/94), 649 So.2d 597. Therefore, appellee is entitled to such interest in the present case and we amend the judgment accordingly.

DECREE
For the foregoing reasons the judgment is amended to award appellee interest on the penalties from the date of the order of the *469 hearing officer. In all other respects the judgment is affirmed.
AMENDED AND AFFIRMED.
NOTES
[1] Defendant's brief states that the trial court, in its reasons for judgment, found claimant's credibility "seriously questionable," and discusses the accident "on October 14, 1993." These statements did not appear in the present case and it is not apparent from whence the defendant derived these supposed remarks.
[2] La. R.S. 23:1221 reads:

(a) For injury resulting in the employee's inability to earn wages equal to ninety per cent or more of wages at time of injury, supplemental earnings benefits equal to sixty-six and two-thirds percent of the difference between the average monthly wages at time of injury and average monthly wages earned or average monthly wages the employee is able to earn in any month thereafter in any employment or self-employment, whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured and whether or not an occupation for which the employee at the time of the injury was particularly fitted by reason of education, training, and experience, such comparison to be made on a monthly basis. Average monthly wages shall be computed as four and three-tenths times the wages as defined in R.S. 23:1021(10).
(b) For purposes of Subparagraph (3)(a), of this Paragraph, the amount determined to be the wages the employee is able to earn in any month shall in no case be less than the sums actually received by the employee, including, but not limited to, earnings from odd-lot employment, sheltered employment, and employment while working in any pain.
[3] LSA R.S. 23:1201 read in pertinent part:

E. If, pursuant to this Chapter, any compensation or medical benefits payable without an order is not paid within the time period provided in Subsection B, C, or D of this Section, there shall be added to such unpaid compensation a penalty of an amount equal to twelve percent thereof or a total penalty of not more than fifty dollars per calendar day for each day in which any and all compensation or medical benefits remain unpaid, whichever is greater, which shall be paid at the same time as, and in addition to, such compensation, unless such nonpayment results from conditions over which the employer or insurer had no control. No amount paid as a penalty under this Subsection shall be included in any formula utilized to establish premium rates for worker's compensation insurance. Whenever the employee's right to such compensation or medical benefits has been reasonably controverted by the employer or his insurer, the penalties set forth in this Subsection shall not apply. The twelve percent or fifty dollars per calendar day, whichever is greater, additional payment shall be assessed against either the employer or the insurer, depending upon who was at fault in causing the delay. No worker's compensation insurance policy shall provide that this sum shall be paid by the insurer if the administrative hearing officer determines that the twelve percent or fifty dollars per calendar day, whichever is greater, additional payment is to be made by the employer rather than the insurer. Any additional compensation paid by the employer or insurer pursuant to this Section shall be paid directly to the employee. The total fifty dollar per calendar day penalty provided for in this Subsection shall not exceed two thousand dollars in the aggregate.