722 So.2d 1200 (1998)
Diane ARCHBOLD
v.
MAXICARE HEALTH PLANS, INC. and ITT Hartford.
No. 98-CA-531
Court of Appeal of Louisiana, Fifth Circuit.
December 16, 1998.
Rehearing Denied January 19, 1999.
*1201 Pat M. Franz, Michael Baham, Metairie, Louisiana, Attorneys for Plaintiff/Appellant.
John J. Erny, III, Metairie, Louisiana, Attorney for Defendants/Appellees.
Panel composed of Judges EDWARD A. DUFRESNE, Jr., SOL GOTHARD, and MARION F. EDWARDS.
GOTHARD, Judge.
This appeal arises from the worker's compensation court. The worker's compensation judge ruled that the employer's insurer, ITT Hartford, was not arbitrary and capricious in reducing claimant's benefits, and therefore, claimant was not entitled to penalties and attorney's fees. For the following reasons, we reverse the decision of the worker's compensation judge.
Diane Archbold was injured and started receiving worker's compensation benefits in 1990. She is totally permanently disabled. She was found eligible for Social Security benefits; however, the amount of her Social Security benefits had been offset by the amount she was receiving as worker's compensation.
On March 25, 1997, ITT Hartford, the employer's worker's compensation insurance carrier, sought to obtain a "reverse offset" by the filing of a Motion for Recognition of the Right to a Social Security Offset with the Office of Workers' Compensation. The worker's compensation judge granted the motion on May 27, 1997. Ms. Archbold received notice of the motion and order on June 4,1997.
In July of 1997, ITT Hartford began applying the reverse offset, and it reduced the compensation benefits paid to Ms. Archbold. Ms. Archbold notified ITT Hartford that she had not received a corresponding increase in her Social Security benefits, and that she had contacted the Social Security Administration, who stated they had no knowledge of the order granting the reverse offset. Ms. Archbold requested that ITT Hartford reinstate her benefits pending Social Security action.
Because she was still receiving only the reduced benefits from ITT Hartford, Ms. Archbold filed a claim with the Office of Workers' Compensation on August 9, 1997, requesting that her benefits be reinstated and further alleging that ITT Hartford was arbitrary and capricious and therefore liable for attorney's fees and penalties. On August 28, 1997, ITT Hartford notified the Social Security Administration of the order granting the reverse offset.
In October, Hartford reinstated full benefits, pending action by the Social Security Administration. In February of 1998, the Social Security Administration began payment.
There were no facts in dispute and this matter was submitted to the hearing officer on memorandum and attached exhibits. On April 28, 1998, the worker's compensation judge rendered judgment finding that Hartford was reasonable in controverting the claim and Ms. Archbold was not entitled to attorney's fees and penalties. The hearing officer also found that WC-Form 1005 was the appropriate procedure for Hartford to follow in claiming the offset.
Ms. Archbold filed a motion for appeal on May 1, 1998. In this appeal she alleges that the insurer should not be allowed to reduce disability benefits until such time as benefits are increased by Social Security. She then argues that Hartford was in error because it failed to timely notify Social Security of the order allowing the reverse offset, and because it failed to reinstate plaintiff's benefits after it was informed that the Social Security Administration had no record of the order granting the reverse offset. Ms. Archbold argues that Hartford's continued reduction of benefits, prior to action by the Social Security Administration, and after Hartford was notified that Social Security had no knowledge *1202 of the reverse offset, constitutes arbitrary and capricious failure to pay.

ANALYSIS
In Garrett v. Seventh Ward General Hospital, 95-0017 (La.App.9/25/95), 660 So.2d 841, 843-844, the Louisiana Supreme Court provided a detailed history of wage-loss benefit coordination laws. The Court discussed the overlap between state workers' compensation benefits and federal Social Security disability benefits, stating:
Simply stated, the present federal statute requires that the amount of Social Security disability payments be reduced when the combined amount of such disability payments and the employee's workers' compensation benefits exceeds eighty percent of the employee's "average current earnings." 42 U.S.C. Sec. 424a(a) (1991). By adopting an offset in the form of an eighty percent federal ceiling, Congress "reduced the duplication inherent in the programs and at the same time allowed a supplement to workmen's compensation where the state payments were inadequate." Richardson v. Belcher, 404 U.S. [78] at 83, 92 S.Ct. [254] at 258 [30 L.Ed.2d 231 (1971) ].
The federal offset statute was modified for a period of time by a provision in Section 424a(d) that the federal offset did not apply if the state workers' compensation law itself provided for an offset of Social Security disability benefits against state workers' compensation benefits in the event of an overlap. By this "reverse offset" provision, Congress allowed the states to provide a benefit for local employers by enacting such a provision, with no reduction in the overall benefits received by employees. However, as part of a cost-cutting reform measure, Congress later imposed a cutoff date of February 18, 1981 for such state legislation. The effect of the cutoff date was to "grandfather in" existing state offset provisions enacted during the window period and to close the door to any subsequent state offset enactments. After the cutoff date, any legislation that added to or altered the scope of an existing state offset provision would not be recognized. 2 Social Security Law & Practice Sec. 26:69 (M. Rosenhouse ed.1987).
The Garrett Court then concluded that, in response to this federal legislation, the Louisiana Legislature enacted the reverse offset provision that is found in La. R.S. 23:1225 A, which reads as follows:
The benefits provided for in this Subpart for injuries producing permanent total disability shall be reduced when the person receiving benefits under this Chapter is entitled to and receiving benefits under 42 U.S.C. Chapter 7, Subchapter II, entitled Federal Old Age, Survivors, and Disability Insurance Benefits, on the basis of the wages and self-employment income of an individual entitled to and receiving benefits under 42 U.S.C. § 423; provided that this reduction shall be made only to the extent that the amount of the combined federal and worker's compensation benefits would otherwise cause or result in a reduction of the benefits payable under the Federal Old Age, Survivors, and Disability Insurance Act pursuant to 42 U.S.C. § 424a, and in no event will the benefits provided in this Subpart, together with those provided under the federal law, exceed those that would have been payable had the benefits provided under the federal law been subject to reduction under 42 U.S.C. § 424a. However, there shall be no reduction in benefits provided under this Section for the cost-of-living increases granted under the federal law after the date of the employee's injury.
The Garrett Court explained the concept of "reverse offset":
A "reverse offset" is a state enactment that requires the removal of the offset taken or to be taken by the federal government. Dennis P. Juge, Louisiana Workers' Compensation Sec. 12:4 (1995). A reverse offset provision "allows the state's reduction to take precedence, and precludes [the federal government] from implementing a second, double, offset." Sciarotta v. Bowen, 837 F.2d 135, 137 (3d Cir.1988). A "reverse offset" provision "effectively shift[s] costs back to the federal government by reducing state workers' compensation benefits to account for federal *1203 [S]ocial [S]ecurity benefits." Harris v. State, Dept. of Labor & Industries, 120 Wash.2d 461, 467, 843 P.2d 1056, 1059 (1993). Therefore, these provisions permit states to recoup for themselves the savings created by the offset and reduce the burden on the state compensation system.
Under reverse offset provisions, "[t]he covered worker should experience no change in the total amount received from the two systems together." Wex S. Malone & H. Alston Johnson III, 13 Louisiana Civil Law TreatiseWorkers' Compensation Law and Practice Sec. 289 (3d ed.1994). Stated otherwise, under the reverse offset, the employee receives the same amount of benefits, but from different sources.
Id. at 844 n. 4.
In the matter before us, it is not disputed that ITT Hartford was entitled to claim the reverse offset as provided by La. R.S. 23:1225. The sole issue in this appeal is whether ITT Hartford was arbitrary and capricious in reducing worker compensation benefits prior to the corresponding increase in Ms. Archbold's Social Security benefits, and in continuing the reduction after being informed that Social Security had no record of the order granting the reverse offset.
ITT Hartford argues that it was entitled to reduce Ms. Archbold's benefits once the order granting the reverse offset had been signed. It alleges that the forms used by the Office of Worker's Compensation, which are sent to the Social Security Administration to be used in determining the amount of the offset, constituted notice to the Administration that the reverse offset was being sought and taken by the employer/insurer. ITT Hartford therefore had a reasonable basis controvert Ms. Archbold's claim and should not be liable for penalties and attorney's fees.
Ms. Archbold first alleges that it is the obligation of the employer/insurer to timely notify the Social Security Administration of the order granting the reverse offset, and that the letter sent by the Office of Worker's Compensation (prior to the signing of the order) is insufficient. Ms. Archbold alleges that ITT Hartford did not timely notify the Social Security Administration so that a coordination of benefits could be effected. ITT Hartford should not have reduced her benefits until the Social Security benefits were increased.
Louisiana Administrative Code 40:I § 2167 sets forth the procedure for an employer/insurer to use in requesting a reverse offset. The regulation provides that upon receipt of a request for a reverse offset, the Office of Worker's Compensation shall request information from the Social Security Administration concerning receipt of social security benefits, to be used in calculating the reverse offset. The regulation further provides that the reverse offset shall be granted ex parte from the date of filing. The regulation is silent with respect to notification to the Social Security Administration of the ruling on, or signing of, the order granting the reverse offset.
In a case decided prior to the adoption of this regulation, the court placed the burden of notice to the Social Security Administration on the party requesting the reverse offset. Louisiana Insurance Guaranty v. Cloud, 627 So.2d 758 (La.App. 2 Cir.1993). In that case, LIGA (in the shoes of the insolvent worker's compensation carrier), was ordered to pay the interest on retroactive payments made by the Social Security Administration. The Court said:
... [T]he total amount due was made retroactive by the Social Security Administration and eventually paid to the claimant. However, this does not negate the fact that the claimant was financially burdened during the six week period [from the time LIGA reduced worker compensation payments until the first Social Security payment]. The claimant's financial burden was a direct result of LIGA's abrupt termination of his benefits. LIGA should have notified the Social Security Administration of its decision to claim the reverse offset in advance of LIGA's termination of claimant's worker's compensation benefits. The Administration's paperwork could have been initiated immediately and the claimant would not have suffered from a lapse in payment. Since LIGA did not give the Social Security Administration timely notice of its election to claim the reverse offset, it is liable to the claimant for legal interest on each past due installment from the date benefits were terminated until the *1204 date the benefits were retroactively paid by the Social Security Administration.
We agree with this decision of our brethren. The employer/insurer is the party who benefits from the offset. Furthermore, the employer/insurer obtains the order granting the offset ex parte, and the employee may not find out about the reverse offset until it had already been granted to the employer/insurer. Thus, it is logical to conclude that the employer/insurer should notify the Social Security Administration.
La. R.S. 23:1225 provides that the reverse offset may be taken when the person is "entitled to and receiving benefits." Furthermore, as stated earlier, when an employer/insurer obtains a reverse offset, the employee should experience no change in the amount received.
It has been recognized that "The court must ensure that a disabled employee is not forced to endure a period of time when he is not receiving his due portion of benefits simply because the Social Security Administration and the employer or his insurer failed to properly coordinate the termination and activation of their respective offsets." Hebert v. Cigna, 637 So.2d 1221, 1228 (La.App. 3 Cir. 5/25/94) 93-1400. By placing the burden of notice, in a timely manner, on the employer/insurer, who obtains the reverse offset ex parte, and who benefits from that offset, we protect the employee from enduring a financial burden due to an abrupt reduction or termination of benefits. We therefore hold that it is the duty of the employer/insurer to notify Social Security Administration in advance of reducing benefits so that the worker will suffer no financial burden.
Ms. Archbold argues that ITT Hartford's reduction of her benefits, after her notification to them that Social Security had not provided a corresponding increase, warrants the imposition of penalties and attorney fees. ITT Hartford counters with the argument that it was reasonable in its belief that Social Security had notice of the reverse offset, and therefore it was not arbitrary and capricious in reducing Ms. Archbold's benefits. Accordingly, the trial court did not err in failing to assess penalties and attorney's fees.
The applicable statutes are the ones in effect at the time of the injury. Dillards Dept. Store v. Cochennic, 98-173 (La.App. 5 Cir. 7/28/98), 716 So.2d 468; Geason v. Harmony Const., 95-367 (La.App. 5 Cir. 11/15/95), 665 So.2d 485, n. 3. At the time of Ms. Archbold's injury, in August of 1990, La. R.S. 23:1201(E)[1] provided in part:
E. If any installment of compensation payable without an order is not paid within the time period provided in Subsections B, C, or D of this section, there shall be added to such unpaid installment a penalty of an amount equal to twelve percent thereon, which shall be paid and the same time as, and in addition to, such installment of compensation, unless such nonpayment results from conditions over which the employer or insurer had no control. Whenever the employee's right to such benefits has been reasonably controverted by the employer or his insurer, the penalties set forth in this Subsection shall not apply.
Attorney fees were provided for by La. R.S. 23:1201.2[2] which read in pertinent part that:
Any insurer liable for claims arising under this Chapter, and any employer whose liability for claims arising under this chapter is not covered by insurance, shall pay the amount of any claim due under this Chapter within sixty days after receipt of written notice. Failure to make such payment within sixty days after receipt of notice, when such failure is found to be arbitrary, capricious or without probable cause, shall subject employer or insurer, in addition to the amount of the claim due to payment of all reasonable attorney's fees for the prosecution and collection of such claim, or in the event a partial payment or tender has been made, to payment of all reasonable attorney's fees for the prosecution and collection of the difference between the amount tendered and the amount due.
Thus, penalties are assessed if compensation or medical benefits are not timely *1205 paid; however, this rule does not apply where the employer reasonably controverts the employee's right to the benefits. Furthermore, an employer/insurer is liable for attorney fees for failure to pay a claim "when such failure is found to be arbitrary, capricious, or without probable cause." An employer who fails to timely investigate an employee's compensation claim subjects itself to statutory penalties and attorney's fees. Kortz v. Colt Energy Services, Inc., 97-159 (La.App. 5 Cir. 7/29/97), 698 So.2d 460. Attorney fee awards and penalty awards are not intended to "compensate" a plaintiff and thereby make him whole, but rather to discourage certain behavior(s) on the part of the offending party, such as the employers', and employers' insurers' indifference toward injured employees. Sharbono v. Steve Lang & Son Loggers, 696 So.2d 1382 (La.1997).
In this case, ITT Hartford reduced claimant's benefits in mid-July, at which time claimant notified ITT Hartford that she was not receiving corresponding Social Security benefits. ITT Hartford did not reinstate full benefits pending Social Security action at that time. On August 9, 1997, this suit was filed. On August 28, 1997, ITT Hartford notified the Social Security Administration; however, full benefits pending Social Security action were not reinstated until October 24, 1997, three months later. This three month delay, in light of the insurer's knowledge that the employee was not receiving corresponding Social Security benefits during that time period, was both unreasonable and arbitrary and capricious. Compare Louisiana Insurance Guaranty Association v. Cloud, supra; and Warren v. Progressive Healthcare Providers, 95-312 (La.App. 5 Cir. 10/18/95), 664 So.2d 462, writ denied, 96-0109 (La.3/8/96), 669 So.2d 399. Accordingly, we find that the trial court erred in failing to grant attorney fees and penalties.
The award of attorney fees must be reasonable based upon the degree of skill and work involved in the case, the number of court appearances, the depositions, the office work and the time spent in court. On appeal, an additional factor to be considered is the time expended on the appeal. Henton v. Walker & Wells Contractors Inc., 25,821 (La. App. 2 Cir. 5/4/94), 637 So.2d 672, writ denied, 94-1491 (La.9/23/94), 642 So.2d 1295. We have considered these factors and we find that an award of $1,750.00 for the time period through trial and an additional $1,750.00 for the appeal is warranted in this case.
We are reluctant to remand a matter, and will not do so when we can resolve the issues for the record before us. In this matter, we cannot discern from the record before us the total amount of benefits withheld from July to October of 1997, and therefore we are unable to determine the appropriate penalties. Accordingly, we will remand this matter for an award of penalties.

CONCLUSION
For the above discussed reasons, the judgment of the workers' compensation judge failing to award penalties and attorney fees is reversed. We award attorney fees in the sum of $3,500.00 and the case is remanded for a determination of the amount of penalties owed to claimant.
REVERSED AND REMANDED.
NOTES
[1] Acts 1988, No. 938, § 1, effective July 1, 1989.
[2] Acts 1988, No. 732, effective September 9, 1988.