618 So.2d 386 (1993)
L.S. ALLEN
v.
The CITY OF SHREVEPORT.
No. 92-C-0874.
Supreme Court of Louisiana.
May 24, 1993.
*387 Joseph R. Gilsoul, Kenneth P. Haines, Weems, Wright, Schimpf, Hayter & Carmouche, Shreveport, for applicant.
Jerald Norman Jones, City Atty., Lydia M. Rhodes, Asst. City Atty., for respondent.
LEMMON, Justice.[*]
We granted certiorari in this workers' compensation case to review the decision of the court of appeal that a partially disabled employee was not entitled to supplemental earnings benefits because he was physically able after his recuperation from the employment injury to return to his former supervisory position, although the position had been abolished in the meantime and the employee was unable to find other employment within his physical capability at anywhere near his previous wages.
On October 1, 1986, plaintiff, the chief supervisor of public buildings for the City of Shreveport, suffered a hernia while helping two City employees lift a cabinet. Plaintiff was then fifty-one years old and had worked for the City for twenty years. Prior to obtaining his supervisory position in the maintenance department, he had been a carpenter and laborer for ten years.
As a result of the injury, plaintiff underwent two operations. From the time of the injury through February 1989, the City paid plaintiff temporary total disability benefits.
On March 15, 1989, plaintiff's primary treating physician released him to return to light duty in a sedentary type of job, with specific physical limitations on lifting and bending.[1] As a maintenance supervisor, plaintiff's primary job responsibilities had been to receive work orders from various departments and to dispatch City employees to perform the work. Occasionally, plaintiff assisted other employees in physical activities, such as lifting or moving. However, plaintiff was unable to attempt to return to his supervisory position with the City because the City in the meantime had abolished his position as an austerity measure during his period of recuperation. Plaintiff sought other employment, but was only able to obtain work as a parking lot attendant at $3.80 per hour, as compared to his earnings at the time of the injury of $12.62 per hour.
*388 Plaintiff then filed a claim with the Office of Worker's Compensation, which recommended that he be paid supplemental earnings benefits from March 1, 1989. After the City rejected the recommendation, plaintiff filed this action in district court, seeking supplemental earnings benefits as well as penalties and attorney's fees.
At trial plaintiff contended, among other things, that he could not perform the manual labor duties required as a part of his former position. The trial judge specifically found that plaintiff was able to return to his former position because that job did not call for manual labor as part of his required duties. The trial judge further found as a fact that plaintiff was partially disabled.[2] Reasoning that the City had the burden of proving employment was available which offered plaintiff at least ninety percent of his previous salary and had failed to meet this burden, the judge awarded plaintiff supplemental earnings benefits for a period of 104 weeks, along with penalties and attorney's fees of $3,000.00.[3]
On the City's appeal, the court of appeal reversed and dismissed plaintiff's action.[4] 595 So.2d 340 (1992). Citing Daigle v. Sherwin-Williams Co., 545 So.2d 1005 (La. 1989), the court held that an injured employee receiving supplemental earnings benefits has the burden of proving a disability which prevents him from earning ninety percent of the wages he earned at the time of the injury, whereupon the employer can defeat entitlement to benefits by proving that the employee is physically able to perform work that was offered to the employee or was available to him in the employee's or employer's community or reasonable geographic region. Because plaintiff was able to return to his former employment, the court concluded that he was "no longer disabled" and that his present inability to earn wages comparable to his pre-injury wages was not the result of physical restrictions caused by the injury, but rather was the result of a depressed labor market.
We granted certiorari to review the decision of the intermediate court. 599 So.2d 319 (1992).
Supplemental earnings benefits were established in 1983 as a method of replacement of lost wages for partially disabled employees. The benefits are designed to replace lost earning capacity of workers who do not fall under the definition of total disability.[5] When an injured employee is able to engage in a gainful occupation, but because of his work-related disability is unable to earn wages at the level he was earning prior to his injury, he is classified as partially disabled. And when the partial disability reaches the level that the employee is unable to earn wages equal to ninety percent or more of the wages he was earning at the time of the injury, he is entitled to supplemental earnings benefits, calculated according to a formula relating to his pre-injury wages and the wages he "is able to earn" in any employment or self-employment after the injury. La.Rev.Stat. 23:1221(3)(a).
The court of appeal erred in the present case in concluding that plaintiff failed to prove he was still disabled after his recuperation because the record showed he could return to his former employment. It is irrelevant whether plaintiff is physically able to perform his former sedentary job that is no longer available. The relevant question is whether plaintiff is partially disabled and whether he is unable to earn *389 ninety percent of the wages he was earning prior to the injury.
Plaintiff's medical and lay evidence established that his earning ability continued to be impaired, even though his doctor released him for sedentary employment with certain restrictions that would not prevent his performing the duties of his former position. Plaintiff undoubtedly was partially disabled, and his entitlement to supplemental earnings benefits was dependent upon his proof that the disability resulted in an inability to earn wages equal to at least ninety percent of his pre-injury wages. Plaintiff met this burden of proof by evidence, accepted by the trier of fact, that his medical restriction prevented him from working at available jobs, such as pizza or newspaper delivery, and that the highest amount of wages he could earn with his disability in available employment was $3.80 per hour.
Once plaintiff proved his inability to earn ninety percent of his pre-injury wages, the burden of proceeding with the evidence was on the employer, who could defeat or reduce benefits only by showing that the employee was earning less than he was "able to earn." Daigle v. Sherwin-Williams, Co., 545 So.2d 1005 (La.1989). The employer, under Daigle, must prove that the employee is physically able to perform a certain job and that the job was offered to him or was available to him in a reasonable geographic location. The employer in the present case offered no such evidence, but relied solely on plaintiff's ability to perform the duties of his former position, a job that required no manual labor but was no longer in existence.
The concept of supplemental earnings benefits is based on a scheme for replacing lost earning capacity by measuring an injured worker's ability to earn wages in the competitive marketplace of workers. Wex S. Malone & H. Alston Johnson, III, 13 Louisiana Civil Law Treatise: Workers' Compensation Law and Practice § 275 (2nd ed.1980). A number of factors other than the worker's earning capacity might affect the matter, such as general economic conditions, assistance by employers or coemployees, geographical location and others. Id.
In the present case the measurement of the established diminution in plaintiff's earning capacity was clearly affected by the prevailing general economic downturn which led to the abolishing of his former position during his period of recuperation after the injury totally disabled him for a period of time. Ironically, plaintiff was physically able to return to his former (but no longer existing) position, but was physically unable to perform the duties of other physically demanding jobs of equal or even lesser pay. But this strange combination of circumstances does not alter the fact that plaintiff on this record was injured on a job of long standing that paid him $12.62 per hour, is partially disabled because of his employment injury, and is presently unable, at least partially because of the disability, to earn ninety percent of the wages he was earning at the time of his injury.[6] He is therefore entitled to supplemental earnings benefits.
The case will be remanded to the court of appeal to fix the amount and duration of benefits and to decide the issues (not reached in the decision on appeal) regarding the termination of benefits at 104 weeks because of plaintiff's alleged retirement and the propriety of the award of penalties and attorney's fees.
Accordingly, the judgment of the court of appeal is reversed, and the portion of the judgment finding plaintiff entitled to supplemental earnings benefits is reinstated. The case is remanded to the court of appeal for decision on the remaining issues.
NOTES
[*] Justice Luther F. Cole, Retired, was assigned to participate in this case, having been on the court when the case was argued.
[1] The limitations apparently resulted from surgical scarring which entrapped the ilioinguinal nerve and caused pain.
[2] The judge made a specific finding that plaintiff could not physically perform the work of a pizza deliveryman or a newspaper deliveryman.
[3] Because of the additional finding that plaintiff had retired under La.Rev.Stat. 23:1221(3)(d)(iii), he was only entitled to 104 weeks of benefits.
[4] Plaintiff also appealed, challenging the 104week limitation on benefits and seeking an increase in attorney's fees.
[5] La.Rev.Stat. 23:1221(1) and (2) define total disability as disability "to engage in any selfemployment or gainful occupation for wages whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured and whether or not an occupation for which the employee at the time of injury was particularly fitted by reason of education, training or experience...."
[6] In brief plaintiff complains that the court of appeal treated him as if he had no residual disability and was competing on an equal basis with other workers in a depressed labor market.