LWOODARD, J.
In this workers’ compensation case, L & D Community Care appeals the WCJ’s decision to award temporary total disability benefits to Ms. Cynthia Crowson, from the date of her work-related injury, February 22, 2000, “until such time in the future that employment is offered within the restrictions imposed by Dr. Bernard.” The WCJ, also, found that the employer, L & D Community Care, failed to reasonably controvert this claim, thereby, entitling Ms. Crowson to attorney’s fees and penalties. We reverse the date that Ms. Crow-son became eligible for TTDs, we modify the judgment to award SEBs, and we affirm the WCJ’s award of attorney’s fees and penalties.
******
*481 In November 1999, Ms. Crowson began her employment for L & D Community Care (L & D) as a sitter. She provided care for Benjamin Knott, a twelve-year-old, wheelchair-bound boy, suffering from cerebral palsy and severe scoliosis. She earned $6.25 per hour.
On February 22, 2000, sometime between 12 p.m. and 3:00 p.m., Ben Knott’s step-father, Jeff Kothenbeutel, told her to readjust Ben in his wheelchair. When she lifted him to readjust him, she felt a popping pain in her back. She did not inform the Kothenbeutel family of her injury because no one was home at the time. However, at 5 p.m., allegedly, she informed Mrs. Kothenbeutel, who had returned with her daughter just prior to the end of her shift, of her injury.
Ms. Crowson did not report her accident to L & D until the morning of February 23, 2000, presumably because the office had already closed by the time that she left the Kothenbeutel home. That morning, she went to the L & D office to get her paycheck. At that time, she told a coworker, who in turn reported to Ms. Lynette Boyd, the owner, that she had hurt her back. Immediately, Ms. Boyd sent her to Quick Care, a part of the Lafayette General Medical Care system, for treatment.
When she arrived there, she gave a history of “hurt back while lifting a 50 lb. child in wheel chair.” The doctor diagnosed her with lumbar strain and limited her lifting activities to 20 pounds or less. When she returned, on February 29, Dr. Alan Broussard diagnosed her with acute low back pain/myofascial lumbar strain and | ^.prescribed physical therapy three times per week. Then, he limited her lifting restriction to 10 pounds. At this time, L & D denied all further medical treatment, including the physical therapy which their physician prescribed.
On April 5, 2000, Ms. Crowson filed a disputed claim for compensation. She filed the claim due to the non-payment of indemnity benefits and denial of medical treatment.
Ultimately, the employer referred her to Dr. Douglas Bernard, their choice of orthopedic surgeon, who examined her on October 20, October 25, and November 7, 2000. She gave the same history and stated that she had no prior back pain. He found her to be a straightforward individual who did not put on, gave a straight history, and a good exam. When she indicated that she had suffered from chronic back pain for over six months, he ordered an MRI which revealed a degenerative disc at L4-5 with a midline disc protrusion. Then, he recommended an anterior inter-body fusion, which the employer denied.
This matter went to trial on June 28, 2001. Ms. Crowson sought approval for surgical intervention, temporary total disability benefits (TTD), penalties and attorney’s fees. After taking the matter under consideration, the WCJ found that she had suffered a work-related injury, ordered the employer to authorize an anterior lumbar fusion, and awarded disability and medical benefits, penalties, and attorney’s fees.
TEMPORARY TOTAL DISABILITY
The WCJ granted Ms. Crowson TTDs from the date of her injury, February 22, 2000, “until such time in the future that employment is offered within the restrictions imposed by Dr. Bernard.” The record, however, is devoid of evidence proving that she was temporarily totally disabled from the date of her injury. Consequently, the WCJ erred by prematurely awarding TTDs.
Although the record does not provide such specific information, presumably, Ms. Crowson’s pain increased from February 22, 2000 until Dr. Bernard examined her. *482 Nonetheless, the record does not present any evidence of her disability at an earlier point in time. Therefore, we may, only, award her TTDs from October 25, 2000, the date that Dr. Bernard recommended the anterior fusion. Thus, we reverse |3the WCJ’s judgment, granting TTDs from February 22, 2000, and award TTDs from October 25, 2000, forward.
In addition, the WCJ ordered that TTDs continue “until such time in the future as employment is offered in the restrictions imposed by Dr. Bernard.” However, we find that the WCJ erred, as La. R.S. 23:1221(l)(d) states:
An award of benefits based on temporary total disability shall cease when the physical condition of the employee has resolved itself to the point that a reasonably reliable determination of the extent of disability of the employee may be made and the employee’s physical condition has improved to the point that continued, regular treatment by a physician is not required.
Consequently, we must amend the judgment and order that Ms. Crowson receive TTDs from October 25, 2000 until her physical condition has resolved itself and no longer requires regular treatment by a physician.
SUPPLEMENTAL EARNING BENEFITS
After her second appointment at Quick Care, Ms. Crowson told her employer that she could return to work with physical restrictions. However, Mr. Kothenbeutel no longer wanted her to care for Ben. Accordingly, L & D offered her another position, beginning March 1, 2000, sitting with an elderly patient. However, she declined this work because she did not know how to measure blood pressure (one of the job’s requirements) and could not let the patient lean on her to walk. Nevertheless, L & D alleges that it offered other employment, as it desperately needed workers, which Ms. Crowson disputes.
In order to recover supplemental earnings benefits (SEBs), an employee must first prove, by a preponderance of the evidence, that she cannot earn wages equal to ninety percent or more of the wages that she earned prior to the accident.[1] Once the employee establishes this factor, she is entitled to SEBs, calculated according to a formula relating to her pre-injury wages and the wages that she can earn in any employment or self-employment after the injury.[2] After she has satisfied her burden, |4the burden shifts to the employer to establish that she is earning less than she is able to earn, by showing that the employee is physically able to perform a certain higher paying job, and that it offered her employment that was available to her in a reasonable geographic location.[3]
Ms. Crowson has not returned to work since her injury. When the employee cannot work or earns less than she is able to earn because of a job-related disability, the employer must establish her earning capacity.[4] L & D failed to present any evidence relating to her employability. Because it did not meet the burden which La.R.S. 23:1221(3)(c)(i) imposes, we must *483 award Ms. Crowson SEBs based upon a zero earnings calculation.
INCREASE IN BENEFITS
Ms. Crowson contends that the WCJ erred in holding that her average weekly wage and resulting temporary total disability rate are to be calculated on the four full weeks prior to the accident on February 22, 2000, without taking into consideration her changes in pay immediately prior to the work injury and her actual average weekly wage and daily rate of pay at the time of the injury. However, La.R.S. 23:1021(10)(a)(iii) provides that the average weekly wage shall be determined in the following manner:
If the employee is paid on an hourly basis and the employee is a part-time employee, his hourly wage rate multiplied by the average actual hours worked in the four full weeks preceding the date of the injury.
Ms. Crowson worked as a part-time employee. Although she worked double shifts during the week of her injury, the law provides that the last four full weeks, preceding the date of injury, must be used to determine the average weekly wage. Therefore, she cannot receive an average weekly wage (AWW) of $250.00, resulting in a TTD rate of $166.67, rather than an AWW of $184.38 and a TTD rate of $122.92. Therefore, we affirm the WCJ’s decision.
| .PENALTIES AND ATTORNEY’S FEES
L & D contests the WCJ’s award of $2,000, for its failure to commence benefits timely, and $5,000 in attorneys fees. The penalty and attorney’s fee provisions of La.R.S. 23:1201 are penal in nature, and therefore, must be strictly construed.[5] Under the statute, penalties and attorney’s fees are not owed if the claim is reasonably controverted. For this to occur, the “defendant must have some valid reason or evidence upon which to base his denial of benefits.”[6] Furthermore, the employer must adequately investigate the claim and have both an articulable and objective reason for denying or discontinuing benefits.
The determination whether an employer should be cast with penalties and attorney’s fees in a workers’ compensation case is essentially a question of fact and a workers’ compensation judge’s finding shall not be disturbed absent manifest error.[7] We find no manifest error in this workers’ compensation judge’s award of penalties and attorney’s fees. Accordingly, we affirm her award of penalties and attorney’s fees and grant Ms. Crowson’s request for additional attorney’s fees in the amount of $3,500 for the appeal.
CONCLUSION
Ms. Cynthia Crowson suffered a work-related injury on February 22, 2000. The WCJ awarded her TTDs from the date of injury until such time that the employer tenders employment within the physical restrictions imposed by her physician. Because the record lacked evidence regarding the timing of her disability to support this finding, we reverse the WCJ’s award and award SEBs from February 22, 2000 until October 25, 2000, the date that her physician recommended surgery. Thus, from October 25, 2000, forward, we award TTDs. Also, we affirm the award of penal *484 ties and attorney’s fees and grant her an additional $8500 in attorney’s fees for the appeal. We deny Ms. Crowson’s request to increase her average weekly wages and TTDs. We assess L & D with costs.
AFFIRMED IN PART, REVERSED IN PART, AND AMENDED.

. Daigle v. Sherwin-Williams Co., 545 So.2d 1005 (La.1989); Peveto v. WHC Contractors, 93-1402 (La.1/14/94); 630 So.2d 689.

. La.R.S. 23:1221(3)(a); Allen v. City of Shreveport, 618 So.2d 386 (La.1993).

. La.R.S. 23:1221(3)(c)(i); Allen, 618 So.2d 386.

. Pirikins v. Cardinal Wholesale Supply Inc., 619 So.2d 52 (La.1993).

. Williams v. Rush Masonry, Inc., 98-2271 (La.6/29/99); 737 So.2d 41.

. Brown v. Texas-LA Cartage, Inc., 98-1063 (La.12/1/98); 721 So.2d 885, 890.

. Foster v. Liberty Rice Mill, 96-438 (La.App. 3 Cir. 12/11/96); 690 So.2d 792.