843 So.2d 1255 (2003)
Easter A. BRADLEY
v.
ConAGRA POULTRY COMPANY.
No. 03-0023.
Court of Appeal of Louisiana, Third Circuit.
April 30, 2003.
*1256 George A. Flournoy, Flournoy & Doggett, Alexandria, LA, for Plaintiff/Appellee, Easter A. Bradley.
John B. Saye Hayes, Harkey, Smith & Cascio, L.L.P., Monroe, LA, for Defendant/Appellant, ConAgra Poultry Company.
Court composed of Chief Judge NED E. DOUCET, JR., JOHN D. SAUNDERS, and JIMMIE C. PETERS, Judges.
PETERS, J.
In this workers' compensation case, ConAgra Poultry Company appeals a judgment in favor of its former employee, Easter Bradley. For the following reasons, we affirm the judgment of the workers' compensation judge (WCJ) in all respects.

DISCUSSION OF THE RECORD
Easter Bradley began employment with ConAgra Poultry Company (ConAgra) in October of 1997. While employed with ConAgra, Ms. Bradley's job duties included cutting and bagging poultry. Ms. Bradley testified that she began noticing problems with her hands over a year after she began employment and that she notified the ConAgra nurse, in accordance with company policy. According to Ms. Bradley, while using scissors in "breast deboning," her left hand "got stuck" and went numb. She continued to have problems with her left hand, and ultimately her right hand as well, and continued to bring the matter to the attention of the company nurse. The nursing treatment consisted of the administration of hot pads and ibuprofen as well as the temporary transfer of Ms. Bradley to light duty.
Finally, on December 11, 2000, ConAgra filed an injury report. Additionally, ConAgra sent Ms. Bradley to Dr. James D. Knecht, apparently a Natchitoches, Louisiana physician, who initially examined Ms. Bradley on December 14, 2000. Dr. Knecht diagnosed her as having bilateral shoulder rotator cuff tendinitis, elbow epicondylitis, and bilateral wrist tendinitis. He prescribed medication and splints and restricted Ms. Bradley's work activities. *1257 Thereafter, Dr. Knecht referred Ms. Bradley for an orthopedic evaluation.
On January 9, 2001, Ms. Bradley saw Dr. Geoffrey James Collins, a Natchitoches, Louisiana orthopedist. An EMG nerve conduction study performed at the request of Dr. Collins indicated that Ms. Bradley had severe bilateral carpal tunnel syndrome, worse on the left than the right. Dr. Collins recommended carpal tunnel release surgery, but only on Ms. Bradley's left side.
In the meantime, Ms. Bradley returned to work with ConAgra, performing light-duty scanning. On February 5, 2001, ConAgra laid Ms. Bradley off of her job, telling her that "they didn't need [her] anymore."
On March 14, 2001, Dr. Collins performed left side carpal tunnel release surgery on Ms. Bradley. A week later, ConAgra instituted weekly indemnity benefits. On April 6, 2001, Dr. Collins released Ms. Bradley to work duties that did not involve the use of the left arm, and on April 27, 2001, he cleared her for light-duty work.
Ms. Bradley continued seeing Dr. Collins, who questioned whether she was "responding appropriately" because "she seemed to be progressing very slowly with complaints of continued pain and numbness that were over and above what we normally expect from this surgery." Because of these continuing complaints, Dr. Collins recommended Ms. Bradley undergo a second EMG nerve conduction study. This test indicated that Ms. Bradley had bilateral median nerve neuropathies at the wrists, with the left wrist being considered moderate with focal demyelination and minimal axonal involvement and the right wrist being considered very mild with no evidence of axonal involvement. Although the EMG results were somewhat abnormal, Dr. Collins was of the opinion that the results were normal following a carpal tunnel release. As of July 17, 2001, he released her to return to work with no restrictions. In doing so, he expressed his concern that Ms. Bradley's continued complaints could be connected with secondary gain. After Dr. Collins responded to an August 9, 2001 inquiry from ConAgra that Ms. Bradley had reached maximum medical improvement and that she did not have any permanent impairment as a result of her injury, ConAgra terminated Ms. Bradley's indemnity benefits effective August 13, 2001.
Subsequently, Ms. Bradley's attorney referred her to Dr. Baer I. Rambach, a Shreveport, Louisiana orthopedist, who first saw her on September 13, 2001. Dr. Rambach reported that his examination revealed localized tenderness and diminished sensation in the left hand as well as diminished sensation in the right hand.
Dr. Rambach next saw Ms. Bradley on December 3, 2001, at which time he reported a positive Phalen test and percussion test on the left hand. Based on his findings, Dr. Rambach restricted Ms. Bradley from work activities and referred her to Dr. Sigurd C. Sandzen, Jr., a Shreveport, Louisiana orthopedic surgeon who specializes in hand surgery.
Dr. Sandzen saw Ms. Bradley on December 12, 2001. He also reported positive findings on examination, and he requested an additional EMG nerve conduction study. ConAgra did not authorize this testing, nor did it pay for treatment by Dr. Rambach or Dr. Sandzen. Notwithstanding ConAgra's refusal to pay for the medical test, on August 8, 2002, on referral from Dr. Sandzen, Ms. Bradley underwent the EMG nerve conduction study. This study revealed moderate residual left median neuropathy at the carpal tunnel *1258 and mild carpal tunnel syndrome on the right.
Ms. Bradley filed the instant claim for indemnity and medical benefits, mileage reimbursement, penalties and attorney fees. At the August 30, 2002 trial, Ms. Bradley testified that she was still experiencing pain in her left hand, wrist, and forearm and that the fingers on her right hand hurt and her hand was numb. She also testified that she was attending vocational technical school, for which she received $20.00 as a nontaxable stipend to offset the cost of transportation and supplies. Additionally, she testified that she received income for babysitting in July and August of 2002.
Upon the completion of evidence, the WCJ rendered judgment in favor of Ms. Bradley, awarding, in part, the following: (1) supplemental earnings benefits beginning August 14, 2001, (2) attorney fees in the amount of $7,000.00 for the discontinuance of indemnity benefits, (3) penalties of $250.00 and attorney fees of $750.00 for failure to provide a medical report, (4) penalties of $2,000.00 each for the failure to authorize treatment with Dr. Rambach and Dr. Sandzen and the failure to authorize the EMG nerve conduction study requested by Dr. Sandzen, and (5) attorney fees of $10,000.00 for the failure to authorize the treatment and testing. ConAgra timely perfected this appeal.

OPINION
On appeal, ConAgra contends that the WCJ erred in determining that Ms. Bradley proved she suffered an occupational disease. Further, ConAgra contends that, in any event, the WCJ erred in finding that Ms. Bradley proved that she is disabled as a result of any such disease.
Louisiana Revised Statute 23:1031.1 provides in part:
A. Every employee who is disabled because of the contraction of an occupational disease as herein defined ... shall be entitled to the compensation provided in this Chapter the same as if said employee received personal injury by accident arising out of and in the course of his employment.
B. An occupational disease means only that disease or illness which is due to causes and conditions characteristic of and peculiar to the particular trade, occupation, process, or employment in which the employee is exposed to such disease. Occupational disease shall include injuries due to work-related carpal tunnel syndrome.
Ms. Bradley's employment with ConAgra required repetitive activity to perform her assigned tasks. Over three years after she began employment with ConAgra, she was diagnosed as having bilateral carpal tunnel syndrome. Regarding causation, Dr. Collins testified that "if she was in a repetitive activity job or fine motor task with her hands over a long period of time, that is the normal expected etiology of carpal tunnel syndrome." He explained: "Carpal tunnel syndrome, by the literature, is attributed [sic] to by continued repetitive motions or use, vibration, positions of work, and a number of other things." Ms. Bradley testified that her job duties at ConAgra included deboning poultry with scissors, which activity she was performing when she first began experiencing problems with her hands over a year after she began employment with ConAgra. ConAgra has produced no contradictory evidence. Accordingly, we do not find manifest error in the WCJ's determination that Ms. Bradley contracted carpal tunnel syndrome as a result of her employment with ConAgra.
In any event, ConAgra also contends that the WCJ erred in determining that Ms. Bradley proved she is disabled as a result of her carpal tunnel syndrome. It *1259 points to the fact that, on July 17, 2001, Dr. Collins released Ms. Bradley to return to work with no restrictions and that Dr. Collins indicated that Ms. Bradley had reached maximum medical improvement and did not have any permanent impairment as a result of her injury. Further, ConAgra points out that Ms. Bradley was capable of performing the light-duty scanning job at its facility because she did so until ConAgra laid her off on February 5, 2001, and was employed as of the time of trial.
In awarding supplemental earnings benefits beginning August 14, 2001, the WCJ relied on the medical opinions of Dr. Rambach and Dr. Sandzen, Ms. Bradley's testimony, and the EMG studies. Specifically, Dr. Rambach was of the opinion that Ms. Bradley could not do repetitive-type work for ConAgra, and Dr. Sandzen testified that Ms. Bradley "should avoid any activity which requires excessive repetitive upper extremity use of the wrist or the hands, and avoid any heavy lifting, pushing and such." It was his professional opinion that patients recovering from carpal tunnel syndrome should be prevented from excessive repetitive and heavy use of the hand "or they will get a repeat problem, which is even worse than the primary problem." Ms. Bradley testified that, at the time of trial, she was still experiencing pain in her left hand, wrist, and forearm and that the fingers on her right hand hurt and her hand was numb. Moreover, Ms. Bradley's latest EMG results indicated moderate residual left median neuropathy at the carpal tunnel and mild right carpal tunnel syndrome. Thus, a reasonable factual basis exists to support the WCJ's finding that Ms. Bradley cannot perform her pre-injury job and that she proved she is unable to earn at least ninety percent of her pre-injury wages.
Moreover, reviewing the record in its entirety, we find that the WCJ's finding in that regard is not clearly wrong. Specifically, "[t]he rule that questions of credibility are for the trier of fact applies to the evaluation of expert testimony, unless the stated reasons of the expert are patently unsound." Lirette v. State Farm Ins. Co., 563 So.2d 850, 853 (La.1990). The WCJ was presented with conflicting medical opinions on the issue of Ms. Bradley's ability to work and chose to credit the opinions of Dr. Rambach and Dr. Sandzen, whose most recent examinations produced positive findings. Additionally, while Dr. Collins released Ms. Bradley to return to work with no restrictions, his testimony appears somewhat equivocal in that he did indicate in a vocational rehabilitation meeting that Ms. Bradley should probably not direct herself into something that would be high risk activity for carpal tunnel syndrome. Further, "[d]isability can be proven by medical and lay testimony" and the WCJ "must weigh all the evidence, medical and lay, in order to determine if the claimant has met his burden of proof." Bolton v. Grant Parish Sch. Bd., 98-1430, p. 4 (La.3/2/99), 730 So.2d 882, 885. Ms. Bradley's testimony and the EMG corroborate that she continues to have problems.
We also reject ConAgra's argument that Ms. Bradley is not disabled because she was able to perform the scanning job. As we appreciate ConAgra's position, because Ms. Bradley no longer has the scanning job due to the lay off rather than due to her inability to perform that job, she is not entitled to supplemental earnings benefits. However, "[i]t is irrelevant whether plaintiff is physically able to perform his former sedentary job that is no longer available." Allen v. City of Shreveport, 618 So.2d 386, 388 (La. 1993). Rather, "[t]he relevant question is whether plaintiff is partially disabled and *1260 whether he is unable to earn ninety percent of the wages he was earning prior to the injury." Id. at 388-89. As set forth above, we find no manifest error in the WCJ's finding that Ms. Bradley has a disability and is unable to earn ninety percent of her pre-injury wages. Further, the fact that Ms. Bradley earned money babysitting in the months of July and August of 2002 does not automatically disqualify her from receiving supplemental earnings benefits because the income she earned is not equal to ninety percent or more of her pre-injury wages. ConAgra's remedy in that regard consists in recalculation of the amount of supplemental earnings benefits owed, not in the termination of benefits. Thus, we affirm the WCJ's award of supplemental earnings benefits.
Finally, ConAgra contests the award of penalties and attorney fees. Pursuant to La.R.S. 23:1201.2, the WCJ awarded attorney fees of $7,000.00 for ConAgra's discontinuance of indemnity benefits. Additionally, pursuant to La.R.S. 23:1201(F), the WCJ awarded penalties of $6,000.00 and attorney fees of $10,000.00 for ConAgra's refusal to authorize medical treatment with Dr. Rambach and Dr. Sandzen and its failure to authorize an EMG nerve conduction study requested by Dr. Sandzen. Also, pursuant to La.R.S. 23:1125, the WCJ awarded attorney fees of $750.00 for ConAgra's failure to furnish a medical report.
Louisiana Revised Statute 23:1201.2 provides for the payment of reasonable attorney fees for the discontinuation of the payment of indemnity benefits "when such discontinuance is found to be arbitrary, capricious, or without probable cause." Louisiana Revised Statute 23:1201(F)(2) provides for the payment of penalties and reasonable attorney fees for nonpayment of benefits unless "the claim is reasonably controverted or ... such nonpayment results from conditions over which the employer or insurer had no control." For purposes of La.R.S. 23:1201.2, "[a]rbitrary and capricious behavior consists of willful and unreasoning action, without consideration and regard for facts and circumstances presented, or of seemingly unfounded motivation." Brown v. Texas-LA Cartage, Inc., 98-1063, pp. 8-9 (La.12/1/98), 721 So.2d 885, 890. "[T]o determine whether the claimant's right has been reasonably controverted, thereby precluding the imposition of penalties and attorney fees under La. R.S. 23:1201, a court must ascertain whether the employer or his insurer engaged in a nonfrivolous legal dispute or possessed factual and/or medical information to reasonably counter the factual and medical information presented by the claimant throughout the time he refused to pay all or part of the benefits allegedly owed." Id.
ConAgra asserts that it reasonably relied on Dr. Collins' medical reports in discontinuing payment of indemnity benefits and in refusing to authorize further medical treatment and diagnostic testing. The WCJ disagreed. In its oral reasons for judgment, the WCJ noted that, in releasing Ms. Bradley, Dr. Collins failed to address the effects of Ms. Bradley's right hand disability, despite his own findings in that regard. Additionally, the WCJ noted that when Dr. Collins conferred with the vocational rehabilitation specialist, he explained that Ms. Bradley should not do work of a repetitive nature. Despite this obvious contradiction, ConAgra blindly relied on Dr. Collins' response to the August 9, 2001 inquiry. The WCJ observed that "[t]here was no further investigation done by ConAgra as to why he made a full discharge to regular duty when he had been limiting her activities with carpal tunnel syndrome to no repetitive activities." The WCJ determined that, given the contradictory *1261 opinions received from Dr. Collins, ConAgra had a continuing duty to investigate when it received the subsequent medical information and was not entitled to "blindly rely on the previous reports." The WCJ found that "[ConAgra] must conduct further investigation. ConAgra didn't do any of those things. They were done with the lady. They didn't authorize any other testing, any other doctors, pay any more benefits, provide any further vocational rehabilitation." Thus, the WCJ concluded that "the termination of benefits, indemnity, and medical and vocational rehabilitation was arbitrary and capricious." We find no manifest error in this factual finding.
Further, we reject ConAgra's contention that the amount of the attorney fee awards is excessive. We find no abuse of discretion in the WCJ's awards of attorney fees.

DISPOSITION
For the foregoing reasons, we affirm the judgment of the WCJ in all respects. We assess all costs of this appeal to ConAgra Poultry Company.
AFFIRMED.