MOORE, J.
 

 | j Jimmy Patterson appeals a judgment rejecting his claim for supplemental earnings benefits (“SEB”), penalties and attorney fees from his employer, General Motors Co. For the reasons expressed, we affirm.
 

 Factual and Procedural History
 

 Patterson went to work for GM in 1981. In June 2006, he was earning $26.68 an hour in the environmental department, cleaning major equipment and sweeping work areas. On June 26, 2006, while he was cleaning a phosphate tank, his coveralls stuck to the roller that moved the assembly line; the machinery somehow activated and wrapped his right leg around the roller. He was trapped for over an hour, with his tibia and fibula sticking out of the skin; when he was finally found, EMTs were certain he would lose his leg. However, after emergency treatment at LSUHSC and surgery at Schumpert to implant a titanium rod, his leg was saved. He then underwent several months of physical therapy until his orthopedist released him to return to work on November 27. GM paid him temporary, total disability (“TTD”) benefits from June 27 through November 27, 2006.
 

 When he returned to work in November 2006, pursuant to UAW contract an ADAPT team met to place Patterson in a job within his physical restrictions and seniority. They placed him in the body shop cleaning, at the same rate of pay. According to Mark Johnson, GM’s labor relations rep, this is a “real” job, not a modified job, and Patterson never complained that he could not perform it. In February 2007, he underwent surgery at Bossier Specialty Hospital to repair his Achilles tendon and treat other effects of the accident. In late April, his orthopedist released him to return to work “with plight duty status”; GM paid TTD for this period. Patterson testified that he is still undergoing pain management and cannot walk, climb or lift as he used to.
 

 When he returned to work in April 2007, the ADAPT team put Patterson back to work in environmental but, this time, he was driving a motorized sweeper. In October 2007, he received a raise to $28.71 an hour. In addition to his hourly wage, from 2005 to 2008, GM was selling a lot of trucks, working extra shifts and offering plenty of overtime. The year before the accident, 2005, Patterson made $104,708; the year after, 2007, he made $92,475, and 2008, $96,927.
 

 According to Mark Johnson, sometime in 2008 the overall economy faltered and GM’s financial condition plummeted. In June 2008, GM eliminated its environmental department, opting to contract these services; later, work was reduced to one eight-hour shift and overtime was virtually abolished. GM kept Patterson to train the contractors, and then moved him to various positions; at trial in September 2010, he was still working in final paint process.
 

 At trial, Patterson complimented GM for always placing him in jobs within his physical restrictions, but complained that he just was not making as much money as he
 
 *468
 
 used to, what with limited shifts and nonexistent overtime. He felt that without his injured leg, he would still have these economic options.
 

 In March 2008, a functional capacity evaluation gave him a 33% impairment of his lower right leg and a 13% whole person impairment; in |3January 2009, his orthopedist agreed with these findings.
 

 In 2009, GM announced a series of shutdowns, with the result that for several months nobody worked in production.
 
 [1]
 
 During this time (through February 2010), Patterson drew $2,661 in unemployment and $11,601 in “SUB pay,” a UAW benefit that pays furloughed workers 90% of their net pay, less a $30 processing charge. Even though his hourly wage was unchanged, Patterson was making much less in 2009 than in earlier years, with the elimination of overtime, the shutdowns, and the modest unemployment and SUB pay.
 

 In September 2009, Patterson filed this disputed claim for benefits, alleging that because of the work-related injury he was no longer able to earn 90% of his pre-injury wage. He demanded SEB of $454 a week, plus penalties and attorney fees. At trial in September 2010, Patterson and GM’s labor relations rep, Mark Johnson, testified as outlined above; the parties also offered various medical and wage records. Patterson argued that his pre-injury average weekly wage was $1,868.21 (over $97,000 annually), and claimed SEB totaling $44,870. GM argued that his wage decline resulted from the distressed economy and GM’s financial straits, not from any work-related disability. Patterson countered that under
 
 Allen v. Shreveport,
 
 618 So.2d 386 (La.1993), a “general economic downturn” is not a valid consideration. He also demanded the maximum statutory penalty of $8,000 and an attorney fee of $10,000.
 

 |4In a six-page opinion, the WCJ discussed and distinguished
 
 Allen, supra:
 
 there, the claimant proved that after his injury, his wages dropped from $12.62 to $3.80 an hour; here, Patterson never sustained a loss of hourly wage. In fact, he earned
 
 more
 
 after the accident, and the WCJ found his testimony “completely self-serving and lacking in credibility.” Finally, finding that Patterson “has not shown that he could not find employment elsewhere that would be less than 90% of his previous wages with GM,” the WCJ rejected his claim. By supplemental opinion, the WCJ also held that Patterson was paid wages “in excess of his pre-injury wages for more than a two-year period after the end of his period of total permanent disability (November 27, 2006),” so further SEB were barred under R.S. 23:1221(3)(d)(i).
 

 After judgment was rendered, Patterson filed a motion for new trial, which the WCJ denied. This appeal followed.
 

 The Parties’ Positions
 

 By his first three assignments, Patterson contests the denial of his claim for SEB. He first contends the WCJ applied the wrong burden of proof: by requiring him to show “that he could not find employment elsewhere,” the WCJ improperly shifted the burden from the employer to the claimant, contrary to
 
 Banks v. Industrial Roofing & Sheet Metal Works,
 
 96-2840 (La.7/1/97), 696 So.2d 551, and
 
 Turner v. Sunbelt Mfg.,
 
 32,691 (La.App. 2 Cir. 6/14/00), 763 So.2d 770. Second, he urges the WCJ erred in finding him “forever barred from SEB because he earned high wages in some months after the accident.” He concedes that for 8 of 37 months | ^between August 2007 and September
 
 *469
 
 2010, he earned more than his pre-injury wage, but contends that because of his injury he is generally unable to earn 90% of his pre-injury wage, and thus entitled to SEB under La. R.S. 23:1221(3)(a). Third, he argues that the WCJ erred in imposing its own doctrine of “fairness” and ignoring the law and jurisprudence. Patterson cites the WCJ’s remark from the bench that he did not “see the fairness” in letting a claimant “benefit from two winger months where he made more,” and giving him a “windfall.” He prays for a judgment awarding him SEB.
 

 GM responds that Patterson lost because of inadequate proof under R.S. 23:1221(3)(a). Unlike the claimant in
 
 Allen, supra,
 
 Patterson actually got a raise after the accident and offered no medical evidence that he was unable to do any of the jobs he held post-accident; he simply failed to prove he could not make 90% of his pre-injury wage. GM also contends that the WCJ did not abuse its discretion in finding Patterson’s credibility lacking, and adds that because of the economic downturn, everybody at GM is now making less than in 2008, regardless of physical condition.
 

 Applicable Law
 

 The purpose of SEB is to compensate an injured employee for the wage-earning capacity he has lost as a result of his accident.
 
 Banks v. Industrial Roofing & Sheet Metal Works, supra.
 
 An employee is entitled to receive SEB if he sustains a work-related accident that results in his inability to earn 90% or more of his average pre-injury wage. La. R.S. 23:1221(3)(a). Initially, the employee bears the burden of proving by a preponderance of the evidence that the injury resulted in his inability to earn |fithat amount under the facts and circumstances of the individual case.
 
 Banks, supra
 
 at 556. In determining if an injured employee has made out a prima facie case of entitlement to SEB, the court “may and should take into account all those factors which might bear on an employee’s ability to earn a wage.”
 
 Daigle v. Sherwin-Williams Co.,
 
 545 So.2d 1005 (La.1989). Only when the employee makes this initial showing does the burden shift to the employer to prove that the employee is physically able to perform a certain job and that the job was offered to the employee or that the job was available to the employee in his or the employer’s community or reasonable geographic area. La. R.S. 23:1221(3)(c)(i).
 

 Implicit in R.S. 23:1221(3)’s requirement that the employee show that a work-related injury results in his inability to earn 90% of his pre-injury wage is a showing that the injury, and not some other cause, resulted in his inability to retain his pre-injury job.
 
 Poissenot v. St. Bernard Parish Sheriff's Office,
 
 2009-2793 (La.1/9/11), 56 So.3d 170. In
 
 Poissenot,
 
 the supreme court elaborated:
 

 Where the employee goes back to his pre-injury job and then is terminated for a reason beyond the employer’s control and totally unrelated to the injury, this strongly suggests that his inability to earn 90% of his pre-injury wages was not the result of his injury and that the employee is in fact able to earn 90% of his pre-injury wages in some capacity. In
 
 Chaisson v. Cajun Bag and Supply Co.,
 
 97-1225 (La.3/4/98), 708 So.2d 375, 384, this Court held that the employer’s offer to place the employee “in a position that [she] could do [in spite of the injury] defeated the employee’s claim for SEB.” Further, the Court held that “[t]his conclusion was bolstered by the fact that [the employee] was able to perform, without difficulty, substantially
 
 *470
 
 similar work [for a different employer] for 9 months.”
 
 Id.
 
 at 384.
 

 Id.
 
 at p. 9, 56 So.3d at 176.
 

 [7The factual findings of the WCJ are subject to the manifest error standard of appellate review.
 
 Dean v. Southmark Const.,
 
 2003-1051 (La.7/6/04), 879 So.2d 112. The appellate court does not determine whether the WCJ’s factual findings and credibility calls are right or wrong, but only whether they are reasonable.
 
 Buxton v. Iowa Police Dept.,
 
 2009-0520 (La.10/20/09), 23 So.3d 275.
 

 Discussion
 

 The record shows that after Patterson’s injury, he returned to work at GM, initially making the same wage as before, $26.68 an hour; a year later, he received a raise to $28.71 an hour. The record also shows that despite a serious injury and a significant whole-body disability rating, he continued to work and was still working at the time of trial. Although he felt that GM was merely accommodating him, GM’s labor rep, Mark Johnson, testified that each of his post-accident jobs was a “real” job, and not a modified position. The WCJ specifically found Patterson’s opinion of the situation less credible than Johnson’s factual description. This evidence supports a finding that Patterson failed to prove, by a preponderance, that his injury resulted in an inability to earn 90% or more of his pre-injury wages.
 

 Patterson’s situation is somewhat similar to that presented in
 
 Poissenot, supra.
 
 Poissenot, a sheriffs deputy, broke his right pinkie while trying to subdue a prisoner in October 2004. The injury was significant, requiring an initial surgery and two subsequent outpatient operations. He sustained a 17% permanent partial disability of the right upper extremity, a reduction to medium-level work activity, and consistent pain at 2 on a scale lRof 10. However, he returned to work “with some accommodation” at his old rate of pay in February 2005. In September 2005, he was furloughed, along with every other member of the St. Bernard Parish Sheriffs Office, as a result of Hurricane Katrina, and he filed a disputed claim in 2006. The WCJ awarded SEB and the court of appeal affirmed.
 

 The supreme court reversed, stressing that the court must take into account
 
 all those factors
 
 which might bear on an employee’s ability to earn a wage.
 
 Id.
 
 at p. 5, 56 So.3d at 174. The court observed that when an employee returns to his pre-injury job and is terminated for reasons beyond the employer’s control and totally unrelated to the injury, this strongly suggests a lack of causation between the injury and the wage loss.
 
 Id.
 
 at p. 9, 56 So.3d at 176. The court distinguished
 
 Allen v. City of Shreveport, supra,
 
 as a case in which the employee sustained an actual decrease in pay and received specific work restrictions. The court noted that Poisse-not’s firing was not a pretext by the sheriffs office to avoid its comp obligation.
 
 Id.
 
 at 10, 56 So.3d at 177. The supreme court cited with approval
 
 Taylor v. Columbian Chemicals,
 
 32,411 (La.App. 2 Cir. 10/27/99), 744 So.2d 704, in which this court held there was no right to SEB where the employee would have, and could have, continued her former employment but for the plant being closed.
 

 If anything, Patterson’s showing is weaker than Poissenot’s: he returned to work at GM in 2006 doing jobs similar to those he held before the accident; he worked plenty of overtime in 2007 and 2008; he received a raise of over $2.00 an hour. Despite his complaints, which the WCJ found | slacking in credibility, and his undisputed disability rating, his work history is that of a steady and reliable employee who is not seriously hampered by
 
 *471
 
 disability. He showed nothing he was unable to do in his post-injury jobs. On this record, the WCJ was not plainly wrong to find that Patterson failed to prove an injury resulting in his inability to earn 90% of his pre-injury wage.
 

 With this finding, there is no merit to Patterson’s argument that the WCJ improperly shifted the burden of proof. He failed to satisfy the initial step of R.S. 23:1221(3)(a) as outlined in
 
 Poissenot, su
 
 pra, regardless of extraneous comments in the WCJ’s written opinion. There is also no merit to the claim that the WCJ improperly applied a “fairness” standard. To the contrary, the WCJ considered
 
 all those factors
 
 which might bear on his ability to earn 90% of his pre-injury wage, including economic factors completely beyond GM’s control. These assignments of error lack merit. The judgment is affirmed.
 

 Conclusion
 

 In light of this conclusion, we pretermit consideration of Patterson’s fourth assignment of error, which urged that his award of SEB should not be limited by the two-year period of R.S. 23:1221(3)(d)(i), and his fifth assignment of error, which demanded penalties and attorney fees under R.S. 23:1201 F. An unsuccessful claimant is not entitled to penalties and attorney fees.
 
 Poissenot, supra
 
 at p. 13, 56 So.3d at 178. The judgment is affirmed at Patterson’s cost.
 

 AFFIRMED.
 

 [1]
 

 . GM filed for Chapter 11 reorganization on June 1, 2009.