# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT


**07-1248**


**JACKIE MORRIS**

**VERSUS**

**CACTUS DRILLING COMPANY**


\*\*\*\*\*\*\*\*\*\*
APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION, DISTRICT 01
PARISH OF CATAHOULA, NO. 04-07530
HONORABLE BRENZA IRVING, PRESIDING
\*\*\*\*\*\*\*\*\*\*


**SYLVIA R. COOKS**
**JUDGE**


\*\*\*\*\*\*\*\*\*\*


Court composed of Sylvia R. Cooks, Michael G. Sullivan and Elizabeth A. Pickett, Judges.


**AFFIRMED, AS AMENDED.**


George A. Flournoy
Flournoy & Doggett (APLC)
P.O. Box 1270
Alexandria, LA 71309
(318) 487-9858
COUNSEL FOR PLAINTIFF/APPELLEE/APPELLANT:
    Jackie Morris

Richard A. Weigand
Weigand & Levenson
427 Gravier Street, Ground Floor
New Orleans, LA 70130
(504) 568-1256
COUNSEL FOR DEFENDANTS/APPELLANTS/APPELLEES:
    Cactus Drilling Company and National American Insurance Co.

**COOKS, Judge.**

In this case, the employer and its insurer appeal the judgment of the Office of Workers' Compensation, arguing it erred in awarding disability benefits to the claimant and assessing penalties and attorney fees. Claimant answered the appeal and requests additional penalties and an increase in attorney fees.

## FACTS AND PROCEDURAL HISTORY

The claimant, Jackie Morris, worked as a floorhand with Cactus Drilling. On August 16, 2004, claimant slipped and fell while at work carrying a fifty pound bag of chemicals. Claimant alleged he sustained injuries to his back, legs and feet as a result of the accident. Cactus Drilling and its insurer, National American Insurance Company, have not disputed claimant's employment nor the occurrence of an accident within the course and scope of employment.

Claimant initially sought medical treatment on August 20, 2004, when he was examined by Dr. Gordon Webb. He complained of lower back pain, which he estimated as eight out of ten in severity. Dr. Webb diagnosed claimant as having lumbosacral strain and bilateral complaint of leg pain. Claimant was treated again by Dr. Webb on August 24, 2004, reiterating his complaints of pain in his lower back, which he stated radiated through his buttocks and down both legs. X-rays were taken of the lumbar spine, which were normal. He was diagnosed with bilateral sciatica.

Claimant returned to Dr. Webb on August 31, 2004, complaining of severe pain at the base of his spine, through the buttocks and down both legs. He stated his legs were "falling asleep." An MRI was ordered and performed on September 7, 2004, which revealed mild to moderate degenerative disc and facet disease in the mid and lower lumbar spine. No disc herniation was found, although a small central disc

bulge was detected. Dr. Webb noted the MRI gave no reason for the continued pain, and he concluded claimant's pain was likely non-physiological and believed claimant could be magnifying his symptoms. Dr. Webb placed claimant on light to modified light-duty restrictions.

Claimant returned to Dr. Webb on September 13, 2004, reporting that physical therapy was not helping and he could not work even at light duty. Dr. Webb felt claimant's examination was normal and returned him to regular-duty work.

Two days later claimant sought treatment with Dr. William Coney, his family physician, rather than returning to Dr. Webb, the employer's choice of physician. Dr. Coney believed claimant should not return to work pending further medical evaluation by a specialist.

On September 21, 2004, claimant was seen by Dr. Clark Gunderson, an orthopedic surgeon. Dr. Gunderson determined claimant had superimposed lumbar disc disease. He concluded claimant was unable to work due to the injuries sustained in the August 16, 2004 accident. Physical therapy was recommended. The insurance carrier did not approve the physical therapy. It was again recommended by Dr. Gunderson on November 12, 2004, and not approved by the insurance carrier. Dr. Gunderson also recommended lumbar epidural steroid injections, which did help to alleviate some of claimant's pain. Physical therapy was eventually approved by the insurance carrier. Despite the injections and therapy, claimant's situation did not improve much. Concerned that claimant may have a herniated disc, Dr. Gunderson ordered an EMG, CT scan, and myelogram. Although no acute ruptured disc was discovered, Dr. Gunderson concluded claimant suffered from a severe lumbosacral strain, which aggravated a pre-existing condition. Dr. Gunderson did not feel

claimant was a surgical candidate, but was of the opinion he could not return to the type of work he was performing before the accident. Because of continued complaints of pain, Dr. Gunderson recommended claimant see Dr. Stephen Katz, a pain management specialist.

Dr. Katz first examined claimant on December 7, 2004, and found he suffered from lumbar radiculopathy. He recommended a series of epidural steroid injections. Dr. Katz agreed with Dr. Gunderson that claimant was not a suitable candidate for surgery, and the only course of treatment was to make claimant's life as tolerable as possible with a protocol of pain medications. Dr. Katz also found claimant was unable to return to heavy manual labor.

Defendants requested that claimant be examined by Dr. Douglas Brown, an orthopedist. That visit occurred on February 7, 2005. Based on the MRI reports, Dr. Brown concluded claimant had sustained a lumbar back strain. He noted there was a slightly bulging L5 disc. Dr. Brown did not believe surgery was necessary, and instead recommended weight loss and physical therapy. Dr. Brown concluded claimant had aggravated a pre-existing condition due to the work accident. Dr. Brown felt claimant should not perform manual labor, but felt this restriction was due to degenerative changes of the spine.

A functional capacity evaluation (FCE) was performed on August 3, 2005. It found claimant's subjective complaints of pain were non-organic and did not match the objective findings. The FCE concluded claimant was capable of performing work in the light to medium category.

After the August 16, 2004 accident, claimant maintained he was unable to resume his work in the oil field. He was not offered a less strenuous position, but was

terminated from employment with Cactus Drilling on September 13, 2004. The Defendants commenced payment of workers' compensation benefits until they were terminated on April 11, 2005. On October 14, 2004, claimant filed a disputed claim for compensation with the Office of Workers' Compensation (OWC) alleging he sustained injuries to his back, legs and feet. Claimant sought disability benefits, any appropriate and necessary medical treatment, vocational rehabilitation services, and sanctions against the employer and its insurer for the premature discontinuance of benefits and the failure to timely approve recommended treatment.

After a trial before the Office of Workers' Compensation, the workers' compensation judge (WCJ) rendered judgment in favor of claimant awarding him temporary total disability (TTD) benefits from April 12, 2005 through August 3, 2005. Claimant was awarded supplemental earnings benefits (SEB) after that date. The WCJ also ordered Defendants to provide claimant with vocational rehabilitation, payment of Dr. Katz's treatment and reimbursement of travel expenses for medical treatment related to the accident. The WCJ assessed a $2,000.00 penalty against Defendants based on the premature termination of TTD benefits, a $2,000.00 penalty due to Defendants' initial failure to reimburse travel expenses, and another $2,000.00 penalty due to Defendants' initial failure to authorize medications recommended by Dr. Katz. Defendants were also ordered to pay $6,000.00 in attorney fees and all court costs.

Defendants have appealed the WCJ's judgment, asserting she erred in her findings concerning disability, causation and the imposition of sanctions. Claimant has answered the appeal, and requests an increase in penalties and attorney fees.

-4-

## ANALYSIS

### I. *Disability.*

Disability is a question of fact which can be proven by medical and lay testimony and the WCJ must weigh all the evidence, medical and lay, in order to determine if the claimant has met his burden of proof. *Bradley v. ConAgra Poultry Co.*, 03-23 (La.App. 3 Cir. 4/30/03), 843 So.2d 1255. Thus, the issue of disability is a factual determination. Factual findings of a WCJ may not be overturned by an appellate court unless the factual findings are manifestly erroneous or clearly wrong. *Fritz v. Home Furniture-Lafayette*, 95-1705, p. 3 (La.App. 3 Cir. 7/24/96), 677 So.2d 1132.

Our review of the record indicates the WCJ's reasons on the disability issue were well supported by the medical evidence. Both Dr. Gunderson and Dr. Katz placed claimant on "no duty" work status. Even Defendants' choice of physician, Dr. Brown, believed claimant should be limited to sedentary work. Thus, the record established a reasonable basis for the WCJ's award of TTD benefits through August 3, 2005, the date of the FCE report which found claimant could perform light to medium duty work.

The WCJ held claimant was only entitled to SEB after the date of the FEC report. The record clearly establishes a basis for the award of SEB. The FCE stated claimant could not perform his previous job duties, and even Dr. Brown acknowledged he was incapable of heavy-duty work. Further, the WCJ specifically noted that Defendants failed to demonstrate there was an available job within the work restrictions set forth in the FCE.

## II.    *Causation.*

In workers' compensation cases, the "claimant has the burden of showing that more probably than not an employment accident occurred and that it had a causal relation to the disability suffered." *Baker v. Conagra Broiler Co.*, 93-1230, pp. 8 (La.App. 3 Cir. 5/4/94), 640 So.2d 494, 498, *writ denied*, 94-1435 (La. 9/23/94), 642 So.2d 1289. Both Dr. Gunderson and Dr. Katz unequivocally testified that claimant's disability resulted from his work injury. By all accounts, claimant was able to perform manual labor prior to the accident, but was unable to after. We find no error on the WCJ's part in finding the claimant's accident of August 16, 2004, aggravated and combined with a pre-existing condition to produce his disability.

Defendants argued claimant's disability resulted from his excessive weight and his failure to stop smoking. However, the record contains no evidence that claimant's weight problems and inability to stop smoking were the primary causative factors of his disability. Claimant notes although Defendants were aware of Dr. Katz's recommendation to claimant that he lose weight and quit smoking, they "never offered [claimant] any assistance, e.g., smoking cessation medication, weight loss programs, etc., . . ." Defendants seemingly developed greater interest in claimant's weight and smoking problems after the WCJ's ruling.

## III.    *Sanctions.*

The WCJ assessed a $2,000.00 penalty against Defendants based on each of the following actions: (1) the premature termination of TTD benefits; (2) the initial failure to reimburse travel expenses; and (3) the initial failure to authorize medications recommended by Dr. Katz. The WCJ also awarded $6,000.00 in attorney fees. "'A WCJ has great discretion in the award of attorney fees and penalties, and

a decision concerning the award of attorney fees will not be disturbed absent an abuse of discretion.'" *Metoyer v. Roy O. Martin, Inc.*, 03-1540, p. 5 (La.App. 3 Cir. 12/1/04), 895 So.2d 552, 556 (on rehearing), *writ denied*, 05-1027 (La. 6/3/05), 903 So.2d 467, *quoting Harvey v. B E & K Const.*, 33,475, p. 3 (La.App. 2 Cir. 8/23/00), 770 So.2d 819, 822.

In awarding a penalty for the termination of benefits, the WCJ specifically noted:

> The record is void of any reasonable basis for defendants' termination of claimant's temporary total disability benefits. At the time of their termination, claimant was still under the care of Dr. Clark Gunderson. Dr. Gunderson had found claimant to be unable to return to work. Therefore, [the] termination of the temporary total disability benefits on April 11, 2005 was arbitrary and capricious conduct.

After a thorough review of the record, we find no abuse of discretion in the WCJ's finding. We likewise find no abuse of discretion in the award of a penalty for the Defendants' failure to reimburse claimant for mileage and in refusing to authorize the physical therapy recommended by Dr. Gunderson.

## IV.    *Claimant's Answer to the Appeal.*

Claimant has answered Defendants' appeal and asks this court to impose an additional penalty under La.R.S. 23:1201(I) for the premature discontinuation of benefits and to award additional attorney fees for the work necessitated by this appeal.

Both La.R.S. 23:1201(F) and 23:1201(I) provide for the imposition of penalties and attorney fees in certain situations. These statutes provide, in pertinent part, as follows:

> F. Failure to provide payment in accordance with this Section or failure to consent to the employee's request to select a treating physician or change physicians when such consent is required by R.S. 23:1121

shall result in the assessment of a penalty in an amount up to the greater of twelve percent of any unpaid compensation or medical benefits, or fifty dollars per calendar day for each day in which any and all compensation or medical benefits remain unpaid or such consent is withheld, together with reasonable attorney fees for each disputed claim; however, the fifty dollars per calendar day penalty shall not exceed a maximum of two thousand dollars in the aggregate for any claim. The maximum amount of penalties which may be imposed at a hearing on the merits regardless of the number of penalties which might be imposed under this Section is eight thousand dollars. An award of penalties and attorney fees at any hearing on the merits shall be res judicata as to any and all claims for which penalties may be imposed under this Section which precedes the date of the hearing.

. . . .

I. Any employer or insurer who at any time discontinues payment of claims due and arising under this Chapter, when such discontinuance is found to be arbitrary, capricious, or without probable cause, shall be subject to the payment of a penalty not to exceed eight thousand dollars and a reasonable attorney fee for the prosecution and collection of such claims. The provisions as set forth in R.S. 23:1141 limiting the amount of attorney fees shall not apply to cases where the employer or insurer is found liable for attorney fees under this Section. The provisions as set forth in R.S. 22:658(C) shall be applicable to claims arising under this Chapter.

The WCJ awarded a $2,000.00 penalty for each of the following violations: (1) the premature termination of TTD benefits; (2) the initial failure to reimburse travel expenses; and (3) the initial failure to authorize medications recommended by Dr. Katz. In neither its oral reasons for judgment, nor in the final judgment, was it specifically stated under which section the penalties and attorney fees were awarded. However, the WCJ stated she was "assess[ing] a penalty in the amount of $2,000.00 due to the arbitrary and capricious termination of temporary total disability benefits." The WCJ's specific finding that the termination of benefits was *arbitrary and capricious* indicates the WCJ imposed the penalty under R.S. 23:1202(I). For penalties to be imposed under R.S. 23:1201(F), the WCJ must find the employer or

insurer failed to "reasonably controvert" the claim, a different and lesser burden of proof than that of "arbitrary and capricious." In brief, claimant's counsel requests an additional penalty of $8,000.00 under the "discontinuance sanctions" of R.S. 23:1201(I). However, at oral argument he argued regardless of which section the WCJ awarded penalties, he should be entitled to benefits under both. We disagree.

Although penalties could be imposed under either section of the statute, to allow penalties under both sections of the statute would be to twice penalize a defendant for the same behavior. We do not believe this was the intent of the statute. There could be a situation where an employer or insurer's behavior could warrant a penalty under the failure to reasonably controvert standard of 23:1201(F), but that same behavior would not be sufficient to amount to "arbitrary and capricious" behavior as set forth in 23:1201(I). Under the statute, the employer would still be liable for penalties and attorney fees under 23:1201(F), but the amount of penalties "shall not exceed a maximum of two thousand dollars in the aggregate for any claim." The more egregious behavior required to meet the "arbitrary and capricious" discontinuance of benefits standard found in La.R.S. 23:1201(I) is subject to "a penalty not to exceed eight thousand dollars." Thus, the more egregious behavior is subject to substantially greater penalties, but not duplicative penalties. Thus, we find no merit in claimant's request for additional penalties for the same violation.

Claimant has also requested an increase in attorney fees for the work necessitated by this appeal. We find merit in this request and award the claimant $2,500.00 in additional attorney fees.

## DECREE

For the above reasons, the judgment of the Office of Workers' Compensation

is amended to award claimant, Jackie Morris, an additional $2,500.00 in attorney fees for the work necessitated by this appeal. In all other respects, the judgment is affirmed. Costs of this appeal are assessed against Defendants, Cactus Drilling Company and National American Insurance Company.

**AFFIRMED, AS AMENDED**.