KNOLL, J.,
concurring in part and dissenting in part.
|¶1 agree with the majority affirmation of the lower courts’ rulings that Ms. Ward proved by a preponderance of the evidence a work-related injury occurred. However, I respectfully dissent from the majority’s reversal of the temporary total disability payments, penalties and attorney fees awarded on the grounds of manifest error.
Disability is a question of fact which can be proven by medical and lay testimony; the Office of Worker’s Compensation hearing officer (OWC) must weigh all the evidence, medical and lay, in order to determine if the claimant has met his burden of proof. Morris v. Cactus Drilling Co., 2007-1248 (La. Ct.App. 3 Cir. 4/30/08), 982 So.2d 957, 961. The question in a manifest error review is not whether the trier of fact was right or wrong but whether the conclusion was reasonable. Buxton v. Iowa Police Dep’t, 2009-520 (La.10/20/09), 23 So.3d 275, 287. I agree with the appellate court that it was reasonable for the OWC to find Ms. Ward was entitled to TTD benefits. There was a reasonable basis for the OWC to find it more probable than not that Ms. Ward had not reached maximum medical improvement on August 25, 2006.
Dr. Yerger examined Ms. Ward on August 2, 2006 and, based upon objective findings, opined she had developed a complex regional pain syndrome, had not 12reached maximum medical improvement (MMI), and recommended she be evaluated by a pain management specialist for therapy and other treatment. After viewing this unfortunate video and despite having seen objective findings, specifically, decreased skin turgor on the left wrist and hand, skin on her left hand duskier in appearance and slightly paler and cool to the touch when compared with her right hand, to base his medical opinion upon, Dr. Yerger significantly changed his opinion without any further examination of Ms. Ward. Because of Dr. Yerger’s objective findings a week before he viewed the video, I find the edited video clearly misrepresented Ms. Ward’s true condition. The OWC’s oral reasons accurately describes the surveillance, stating:
The Court reviewed the video with both counsel and encouraged both to make comments on the record to explain the pictorial evidence. The video surveillance sequences began about 5:30 in the morning on March 2, 2005, and continued sporadically for some seventeen months or so until around 12:00 noon on August 8, 2006. This some year and a *436 half was condensed into about ten minutes of snippets, clips and random shots. Now, I suppose that if any of these flashes in time had shown Mrs. Ward throwing a shot put, operating a jackhammer or something to that effect, it might be a different matter. But instead, we see Mrs. Ward’s left hand carrying a newspaper, holding a coffee cup and lifting — not sweeping, just lifting — a broom. That’s about it.
The purely unilateral use of video surveillance video, especially one as disjointed, ill-conceived and poorly produced as the one in open court to justify termination of medical treatment and indemnity payments to an injured worker flies squarely in the face of any sense of fair play.[1]
(emphasis supplied)
I hasten to add the surveillance of Ms. Ward showing only minor hand activity supports Dr. Yerger’s initial medical opinion rather than nullifies it. The edited version of the video was reduced to approximately ten minutes of material. | .¡Moreover, the video cannot show any pain she endured. I find it problematic Dr. Yerger changed his medical opinion so quickly and drastically without first examining Ms. Ward. Because of this, I find Dr. Yerger’s changed opinion unreliable. I cannot say the OWC was unreasonable in disregarding the surveillance video and Dr. Yerger’s changed medical opinion.
Contrary to the majority’s ruling, the evidence does not support finding the OWC manifestly erred in its determination that Ms. Ward proved by clear and convincing evidence her inability to engage in any type of employment. The OWC found these random snippets of video, condensed into ten minutes from months of surveillance, did not outweigh the objective findings and medical opinion of Dr. Yerger made just one week before he saw the video. Additionally, Ms. Ward explained she did not wear the compression glove all the time because it caused her hand to hurt more. She also testified Dr. Cenac and the therapist instructed her to use her hand as much as possible.
Likewise, the court of appeal did not err in citing to Fabre v. ICF Kaiser Int'l, 2001-2734 (La. Ct.App. 1 Cir. 11/8/02), 835 So.2d 724, because I do not find, as the majority does, the court of appeal relied upon Fabre for its holding that the employer’s contact with the IME physician was improper. The court of appeal cited to Fabre because in that case also, the employer relied upon surveillance video but the OWC found “nothing in the tapes to dispute his [claimant’s] injury.” Fabre, 835 So.2d at 730. Similar to the instant matter, the video showed minor activity which the factfinder determined to be insignificant. Fabre cited to the well-established premise that the question on review is not whether the trier of fact was right or wrong but whether the conclusion was reasonable. Id. at 731. I disagree with the majority’s conclusion that the court of appeal relied upon Fabre for its distinguish-ablejjdetermination that it was improper for the adjuster to send surveillance video to the IME physician.
Because I find the OWC did not manifestly err in awarding TTD benefits and penalties and attorney fees based on the arbitrary and capricious termination of Ms. Ward’s benefits, I respectfully dissent *437 from the majority’s reversal on these issues.

. The court of appeal observed that the OWC erred in stating the surveillance began in March 2005 because it began in March 2006. Nevertheless, this did not change the OWC's characterization of the video. Iberia Med. Ctr. v. Ward, 09-380, 09-381 (La. Ct.App. 3 Cir. 11/10/09), 26 So.3d 784, 793, n. 4.